IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number:  2013-NMSC-045

Filing Date:  September 12, 2013

Docket No. 33,874

JOE ROBERT ENCINIAS,

      Plaintiff-Petitioner,

v.

WHITENER LAW FIRM, P.A.
and RUSSELL WHITENER,

      Defendants-Respondents.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Eugenio S. Mathis, District Judge**

Will Ferguson & Associates
David M. Houliston
Albuquerque, NM

Roger V. Eaton
Albuquerque, NM

Sanders & Westbrook, P.C.
Maureen A. Sanders
Albuquerque, NM

Wray & Girard, P.C.
Katherine Wray
Albuquerque, NM

for Petitioner

Tax, Estate & Business Law, Ltd.
Barry D. Williams
James Reist
Albuquerque, NM

for Respondents

Coppler Law Firm, P.C.
Gerald A. Coppler
Thomas R. Logan
Santa Fe, NM

for Amicus Curiae New Mexico Public Schools Insurance Authority

**OPINION**

**CHÁVEZ, Justice.**

**{1}**     This case concerns an action for legal malpractice based on the defendant law firm's failure to file suit within the statute of limitations.  The viability of the malpractice suit hinges on whether the underlying cause of action, a claim against a school district for injuries inflicted on one student by another, would have been barred by sovereign immunity or permitted by the Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -30 (1953, as amended through 2013).  We conclude that the plaintiff has raised a genuine issue of material fact regarding the viability of the underlying suit under the premises liability provision of the TCA, § 41-4-6(A).  For this reason, we reverse the Court of Appeals and vacate the district court's grant of summary judgment.  We also conclude that the plaintiff may pursue his misrepresentation claim against the defendant law firm.

**BACKGROUND**

**{2}**     The plaintiff, Joe Robert Encinias, claims that in late September of 2004, he was badly beaten by a classmate or classmates at Robertson High School in Las Vegas, New Mexico.  The alleged attack itself took place outside of the school property, on a street that the school had cordoned off so that students could patronize food vendors there.  Encinias claims that he lost consciousness during the attack, but he recalls waking up alone on the street.  In early October, Encinias was treated at a hospital for severe internal injuries that he alleges were sustained during the beating.

**{3}**     In January 2006, Encinias and his parents retained defendants Russell Whitener and the Whitener Law Firm (collectively Whitener) to represent Encinias in a possible suit against Robertson High School and the Las Vegas School District.  However, Whitener never filed a complaint in the case.[1]  In April 2006, the Encinias family contacted Whitener

---

[1]Encinias alleges that a complaint was filed, and the Court of Appeals echoes that claim, *Encinias v. Whitener Law Firm, P.A.*, 2013-NMCA-003, ¶ 1, 294 P.3d 1245, but the record neither supports that allegation nor contains a copy of any complaint in the case, and New Mexico court records do not reflect that any complaint was filed.

to check on the status of the case. Whitener asked the family to re-submit its paperwork. Encinias alleges that Whitener lost the documents that Encinias had submitted earlier and had done no work on the case. In the fall of 2006, the Encinias family contacted Whitener over concerns that the statute of limitations would run out. In fact, the statute of limitations ran two years after the incident, in late September or early October 2006.[2] *See* § 41-4-15(A) (stating that TCA suits must be "commenced within two years after the date of occurrence resulting in loss, injury or death"), *held unconstitutional on other grounds as recognized by Jaramillo v. Heaton*, 2004-NMCA-123, ¶ 4, 136 N.M. 498, 100 P.3d 204. A Whitener attorney testified that he and his colleagues had been aware of the statute of limitations, but they had allowed it to run because they were concerned about the strength of the case and thought that they could get around the statute. In August 2007, Whitener realized that the case was barred. In February 2008, the firm decided not to pursue the suit. Whitener waited until the spring of 2008 to tell the family that it had missed the statute of limitations.

**{4}** In October 2008, Encinias filed suit against Whitener for legal malpractice and misrepresentation, among other claims that have subsequently been abandoned. The district court granted summary judgment for Whitener on all claims. The Court of Appeals affirmed the grant of summary judgment, *Encinias v. Whitener Law Firm, P.A.*, 2013-NMCA-003, ¶ 2, 294 P.3d 1245, and rejected Encinias's malpractice claim, concluding that the TCA did not waive the school district's immunity, *id.* ¶ 24. The Court also held that summary judgment was proper on Encinias's misrepresentation claim because Encinias did not establish that he suffered damages as a result of Whitener's misconduct. *Id.* ¶ 29.

**{5}** Encinias argues on appeal for reversal of summary judgment on both the legal malpractice and the misrepresentation claims. This Court granted certiorari.

**DISCUSSION**

**{6}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. This is a legal question that is reviewed de novo on appeal. *Id.*; *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 8, 139 N.M. 12, 127 P.3d 548. When we review a motion for summary judgment, we "view the facts in a light most

---

[2]The first amended complaint states that the incident occurred on or about September 30, 2004. If the incident occurred on September 29, as Encinias alleges in his brief, the statute of limitations would have ended on September 29, 2006. *See* § 41-4-15(A) (establishing two-year statute of limitations). However, if the incident occurred on September 30, Section 41-4-15(A) would place the end of the limitations period on September 30, 2006, which was a Saturday. According to Rule 1-006(A) NMRA, if the end of a limitations period falls on a Saturday or Sunday, the limitations period is extended to the next business day. Therefore, if the incident occurred on September 30, the limitations period ran on Monday, October 2, 2006.

favorable to the party opposing summary judgment and draw all reasonable inferences in support of a trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). Courts in New Mexico "view summary judgment with disfavor," *id.* ¶ 8, and consider it "a drastic remedy to be used with great caution." *Pharmaseal Labs., Inc. v. Goffe*, 1977-NMSC-071, ¶ 9, 90 N.M. 753, 568 P.2d 589.

## A. Malpractice claim

**{7}** Encinias argues that Robertson High School and the school district were negligent in failing to protect him from being attacked, and further negligent in failing to respond to the attack or notice that it had occurred. Encinias also argues that he would have had a viable cause of action against the school district for negligent maintenance or operation of a public building. *See* § 41-4-6(A). However, due to Whitener's failure to file a complaint within the two-year statute of limitations, any claim Encinias had against the school district is now barred. *See* § 41-4-15(A) (establishing statute of limitations for the TCA). Encinias now attempts to recover from Whitener on a theory of legal malpractice.

**{8}** The elements of legal malpractice are: "(1) the employment of the defendant attorney; (2) the defendant attorney's neglect of a reasonable duty; and (3) the negligence resulted in and was the proximate cause of loss to the [client]." *Sharts v. Natelson*, 1994-NMSC-114, ¶ 10, 118 N.M. 721, 885 P.2d 642 (alteration in original) (internal quotation marks and citation omitted). The only issue before this Court is the third element, loss to the client. Under New Mexico law, the plaintiff in a legal malpractice suit must prove this loss by demonstrating by a preponderance of the evidence that he or she would have prevailed on the underlying claim. *Richardson v. Glass*, 1992-NMSC-046, ¶ 10, 114 N.M. 119, 835 P.2d 835 ("Plaintiff had the burden of not only proving her counsel's negligence, but also that she would have recovered at trial in the underlying action."); *George v. Caton*, 1979-NMCA-028, ¶¶ 46-47, 93 N.M. 370, 600 P.2d 822 ("In a malpractice action . . . the measure of damages is the value of the lost claims, i.e., the amount that would have been recovered by the client except for the attorney's negligence."); *see also Andrews v. Saylor*, 2003-NMCA-132, ¶ 15, 134 N.M. 545, 80 P.3d 482 (stating that the preponderance-of-the-evidence standard is applicable to legal actions). In this case, the Court of Appeals held that because sovereign immunity would have barred the underlying claim, the loss of the claim did not damage Encinias. *See Encinias*, 2013-NMCA-003, ¶ 24 (holding that school did not waive its immunity and affirming summary judgment in favor of Whitener).

**{9}** In general, the state is immune from tort suits. Section 41-4-4(A). The exceptions to this rule are the specific waivers of immunity contained in the TCA. *Id.* The provision of the TCA at issue in this case is Section 41-4-6(A), which waives the state's immunity for injury "caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." We have stated that this section "may appropriately be termed a 'premises liability' statute." *Bober v. N.M. State Fair*, 1991-NMSC-031, ¶ 27, 111 N.M. 644, 808 P.2d

4

614. The Legislature has declared that "[l]iability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty," § 41-4-2(B), so we infer that the waiver of liability in Section 41-4-6(A) incorporates the concepts of premises liability found in our case law.

**{10}** Like common-law premises liability, the waiver in Section 41-4-6(A) is not limited to injuries occurring on the defendant's property. *Bober*, 1991-NMSC-031, ¶ 27; *see also Stetz v. Skaggs Drug Ctrs., Inc.*, 1992-NMCA-104, ¶ 9, 114 N.M. 465, 840 P.2d 612 ("[*Bober*] merely applied the traditional rule that on[e] who owns or controls property has a duty to refrain from creating or permitting conditions on such property that will foreseeably lead to an unreasonable risk of harm to others beyond the property's borders."). Also like common-law premises liability, the waiver is not limited to injuries resulting from a physical defect on the premises. *Bober*, 1991-NMSC-031, ¶¶ 26-27; *Callaway v. N.M. Dep't of Corr.*, 1994-NMCA-049, ¶ 17, 117 N.M. 637, 875 P.2d 393 (noting this Court's rejection of a narrow "physical defect" standard); *see also Coca v. Arceo*, 1962-NMSC-169, ¶ 2, 19, 71 N.M. 186, 376 P.2d 970 (reversing summary judgment for the defendant where the plaintiff alleged that the owners of the bar should have protected the plaintiff from battery by another patron). Instead, we interpret Section 41-4-6(A) broadly to waive immunity "where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." *Castillo v. Cnty. of Santa Fe*, 1988-NMSC-037, ¶ 3, 107 N.M. 204, 755 P.2d 48. "The waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building." *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 9, 140 N.M. 205, 141 P.3d 1259.

**{11}** Such a condition could take many forms. In *Castillo*, we held that wild dogs roaming the grounds of a housing project "could represent an unsafe condition upon the land" that would waive the defendant county's immunity under Section 41-4-6(A). 1988-NMSC-037, ¶¶ 1, 9. In *Bober*, the potentially unsafe condition was a high volume of cars exiting a parking lot after a concert. 1991-NMSC-031, ¶ 2. A city creates a dangerous condition if it operates a municipal swimming pool with an inadequate number of lifeguards. *Leithead v. City of Santa Fe*, 1997-NMCA-041, ¶ 15, 123 N.M. 353, 940 P.2d 459. A prison creates a dangerous condition by allowing known gang members to congregate in a recreation room that is shielded from observation by guards. *Callaway*, 1994-NMCA-049, ¶¶ 4, 19. Most recently, this Court held that a public school creates an unsafe condition for its students when it actively violates the students' individualized education programs and then fails to follow proper emergency procedures. *Upton*, 2006-NMSC-040, ¶¶ 18-21.

**{12}** This Court has also made it clear that there are limits to the waiver of immunity in Section 41-4-6(A). In *Espinoza v. Town of Taos*, 1995-NMSC-070, ¶ 16, 120 N.M. 680, 905 P.2d 718, this Court held that a municipal summer camp's failure to supervise young children at a playground did not waive the town's immunity from suit. *Id.* ¶¶ 4, 16. The

5

child was injured when he fell off a slide, not by any defect in the playground itself, and the playground was generally "a safe area for children." *Id.* ¶¶ 3, 14. Whitener correctly cites *Espinoza* for the proposition that there is no waiver of immunity under Section 41-4-6(A) for negligent supervision. Whitener also relies on *Pemberton v. Cordova*, 1987-NMCA-020, 105 N.M. 476, 734 P.2d 254, for the proposition that a school does not waive its immunity by failing to prevent one student from attacking another.

{13} However, neither *Espinoza* nor *Pemberton* precludes recovery under the facts argued by Encinias. Whitener is correct that *Pemberton* states a general rule that schools are not liable for one student's battery of another. *See* 1987-NMCA-020, ¶ 3. *Pemberton* is based on a narrow reading of Section 41-4-6(A) that has since been discredited, *Williams v. Cent. Consol. Sch. Dist.*, 1998-NMCA-006, ¶ 14, 124 N.M. 488, 952 P.2d 978, but its central premise, when analyzed under a premises liability theory, is still valid. *See Espinoza*, 1995-NMSC-070, ¶ 9 (discussing *Pemberton*). There can be no waiver under Section 41-4-6(A) without a dangerous condition on the premises, and a single act of student-on-student violence does not render the premises unsafe. In *Pemberton*, one student "allegedly struck and injured" another, but there does not seem to have been any allegation of a broader pattern of violence at the school, or any facts to suggest that the school, in the exercise of ordinary care, could have discovered that the violence was about to occur and that the school could have protected the student from injury. 1987-NMCA-020, ¶ 2. The plaintiff in *Pemberton* specifically alleged negligent supervision but did not allege that the school was negligent in failing to exercise reasonable care to discover and prevent dangerous conditions caused by people on its premises. *See Coca*, 1962-NMSC-169, ¶ 7 (explaining the duty of a business to protect patrons from the harmful acts of third persons if the business could have discovered that such acts were about to be done, and could have protected against the injury.). By contrast, in the present case, Encinias has produced an affidavit from an assistant principal at the school stating that "[t]he area where the vendor trucks parked was considered to be a 'hot zone' for potential trouble around the school. 'Hot zones' were locations where students congregate and where there has been a history of problems that exist such as fights."

{14} While one student's battery of another would not generally waive a school's immunity under Section 41-4-6(A), a school's failure to address a pattern of student violence in a particular area might create an unsafe condition on the premises. Our case law has been clear that failure to address a pattern of violence is *not* merely failure to supervise. In *Espinoza*, this Court explained that negligent supervision did not waive the town's immunity because the playground maintained by the town was essentially safe: "There were no gangs threatening the children, no free-roaming dogs, no influx of traffic, no improperly maintained equipment." 1995-NMSC-070, ¶ 14. A municipality has no duty to supervise children in an ordinary playground, but *Espinoza* suggests that it would have a duty to exercise reasonable care to prevent injury to visitors from harmful conditions, including a pattern of violence in playgrounds. *Id.* Similarly, *Callaway* establishes that a prison may not release new inmates into a poorly monitored space with known gang members and items that could be used as weapons. 1994-NMCA-049, ¶¶ 4, 19. This does not create a waiver

6

of immunity for negligent supervision, but it does mean that prisons cannot turn a blind eye to threats to their inmates' safety. *See Espinoza*, 1995-NMSC-070, ¶ 13 (stating that *Callaway* "did not rely on negligent supervision," but rather on the fact that the prison's security practices endangered the entire prison population).

**{15}** In enacting the TCA, the Legislature expressed an intent to waive the state's immunity in situations that would subject a private party to liability under our common law. *See* § 41-4-2(B) (incorporating "traditional tort concepts"). Therefore, the facts of a case will support a waiver under Section 41-4-6(A) if they would support a finding of liability against a private property owner.

**{16}** New Mexico law imposes a duty on businesses to protect their patrons from "the harmful acts of third persons if, by the exercise of reasonable care, the proprietor could have discovered that such acts were being done or about to be done, and could have protected against the injury by controlling the conduct of the other patron." *Coca*, 1962-NMSC-169, ¶ 7 (citing II Restatement of Torts § 348 (1934) (now covered by Restatement (Second) of Torts § 344 (1965)). It is well established that the owner of a business may be liable even for a third party's intentional criminal acts on its premises. In *Reichert v. Atler*, 1994-NMSC-056, ¶¶ 1, 3, 117 N.M. 623, 875 P.2d 379, this Court held that the owners of a bar reputed to be dangerous were liable for their proportion of fault in a wrongful death suit arising from a murder in the bar. The bar had "a reputation as being one of the most dangerous bars in Bernalillo County and [had] been . . . the scene of numerous shootings, stabbings, and assaults," but the bar had no professional security personnel on staff. *Id.* ¶ 3. On the evening of the murder, a bar employee witnessed the victim and the perpetrator arguing, and the victim told the employee that he feared the perpetrator, the perpetrator carried a gun, and he had heard that the perpetrator had killed someone. *Id.* ¶ 2. The employee did not call the police or otherwise protect the victim, and the courts held that the owners of the bar "breached a duty to provide adequate security to protect patrons of the bar, including [the victim], who was specifically a foreseeable victim of harm." *Id.* ¶¶ 2, 4, 12.

**{17}** The operative principle that justified holding business proprietors liable in *Reichert*, 1994-NMSC-056, and *Coca*, 1962-NMSC-169, is the same as the principle found in *Espinoza*, 1995-NMSC-070, ¶ 14, and *Callaway*, 1994-NMCA-049, ¶¶ 4, 19. Just as businesses must exercise reasonable care to discover and prevent dangerous conditions caused by people on their premises, *Coca*, 1962-NMSC-169, ¶ 7, so must the government. The question is not about general supervision; the question under a premises liability theory of recovery involving third-party conduct is whether the government exercised reasonable care to discover and prevent dangerous conditions caused by people on its premises. The government does not "have the duty to do everything that might be done," § 41-4-2(A), but it can be liable for the violent acts of a third party if the government reasonably should have discovered and could have prevented the incident. Like businesses, the government's "duty to protect visitors arises from a foreseeable risk that a third person will injure a visitor and, as the risk of danger increases, the amount of care to be exercised . . . also increases." *See* UJI 13-1320 NMRA.

7

**{18}** In this case, Encinias has established a genuine issue of material fact as to whether there was a dangerous condition on the premises of the high school. The assistant principal's statement that the area where the attack occurred was a "hot zone" for student violence would not be enough, taken alone, to support a finding of liability, but it *is* enough to raise questions about the degree of student violence and the school's efforts to discover and prevent student violence in that area. *See Upton*, 2006-NMSC-040, ¶ 25 (holding that the plaintiffs' claim would constitute a waiver of immunity under Section 41-4-6(A) *if proven* and that the plaintiffs were entitled to have a factfinder consider the claim). The assistant principal was in a position to know the location and frequency of student fights, and her affidavit, although vague, was more than a mere repetition of the allegations in the complaint. *See Edward C. v. City of Albuquerque*, 2010-NMSC-043, ¶ 43, 148 N.M. 646, 241 P.3d 1086 ("The non-moving party may not simply rely upon the allegations of his or her pleading."). Encinias has also introduced evidence that the area in which the alleged beating occurred was not monitored by security cameras and that the security guards and teachers assigned to monitor the area were not present at the time of the attack. If Encinias is able to demonstrate that there was a history of student violence in the area by the food trucks, the lack of security measures could indicate that the school failed to address the problem. We hold that Encinias has established the existence of a genuine issue of material fact regarding the presence of a dangerous condition at the school, and summary judgment on the malpractice claim is therefore inappropriate. We therefore reverse the Court of Appeals on this issue.

### B.    Misrepresentation claim

**{19}** Encinias also appeals the summary judgment against him on his misrepresentation claim. Encinias describes three grounds for the misrepresentation claim: (1) Whitener failed to pursue the underlying claim in a timely fashion, (2) Whitener failed to inform Encinias that no work had been done on the case, and (3) Whitener failed to inform Encinias when it became clear that the statute of limitations had passed. The first theory was not set forth in Encinias's amended complaint, and we do not consider it here. *See Albuquerque Prods. Credit Ass'n v. Martinez*, 1978-NMSC-003, ¶ 14, 91 N.M. 317, 573 P.2d 672 ("It is fundamental that matters not brought into issue by the pleadings and upon which no decision of the trial court has been sought, or fairly invoked, cannot be raised on appeal." (citing NMSA 1953, § 21-12-11 (1974), *now codified as amended in* Rule 12-216 NMRA)). We consider the other two theories below.

**{20}** In New Mexico, "misrepresentation can be by either commission or omission." *In re Stein*, 2008-NMSC-013, ¶ 35, 143 N.M. 462, 177 P.3d 513. The Court of Appeals acknowledged that the record suggests that Whitener might have improperly withheld information from Encinias. *Encinias*, 2013-NMCA-003, ¶ 29. However, the Court of Appeals also held that Encinias had failed to demonstrate that he suffered damages as a result of the misrepresentation, and affirmed summary judgment against him for that reason. *Id.* ¶¶ 29-30. We reverse the Court of Appeals for two reasons. First, with the malpractice claim reinstated, it is not necessarily accurate that Encinias "was not damaged by Whitener's

misrepresentations." *Id.* ¶ 30. Second, contrary to the holding of the Court of Appeals, *id.*, damages are not an element of fraudulent misrepresentation. *Garcia v. Coffman*, 1997-NMCA-092, ¶¶ 34-36, 124 N.M. 12, 946 P.2d 216; *see also* UJI 13-1633 NMRA (stating that "[a] party is liable for damages proximately caused by [his] [her] fraudulent misrepresentation," but not listing damages in elements of fraudulent misrepresentation).

**{21}** Encinias argues that Whitener committed misrepresentation by failing to inform Encinias that the statute of limitations had passed. (It is not clear from the first amended complaint whether Encinias alleged negligent or fraudulent misrepresentation, but he clarified before the district court that he alleged both types.) Encinias's first amended complaint states that Whitener should have made this disclosure in July of 2007. However, the statute of limitations ran in the fall of 2006. Even if Whitener had informed Encinias of the problem during the summer of 2007, the suit would still have been barred. As the Court of Appeals observed, Encinias does not allege that he suffered any damages other than the loss of the underlying suit. *Encinias*, 2013-NMCA-003, ¶ 30. Therefore, compensatory damages are not available for misrepresentation under this theory. Without actual damages, Encinias cannot pursue a claim for negligent misrepresentation; nominal and punitive damages are not available in a negligence action absent proof of actual damages. *Sanchez v. Clayton*, 1994-NMSC-064, ¶ 14, 117 N.M. 761, 877 P.2d 567.

**{22}** However, nominal and punitive damages are available in suits for intentional torts, and Encinias can pursue both in a claim for fraudulent misrepresentation. *Id.* ¶ 15. To prove fraudulent misrepresentation, a plaintiff must demonstrate by clear and convincing evidence that (1) a representation of fact was made (either by commission or by omission) that was not true, (2) the defendant made the representation knowingly or recklessly, (3) the representation was made with the intent to induce the plaintiff to rely upon it, and (4) that the plaintiff relied on the representation. UJI 13-1633; *see also Stein*, 2008-NMSC-013, ¶ 35 (misrepresentation may be committed by omission). In this case, Whitener realized in the summer of 2007 that the case was barred, but Whitener did not disclose this fact to Encinias until the spring of 2008. Encinias has produced some evidence suggesting that by delaying this disclosure, Whitener made it more difficult for Encinias to collect evidence supporting his underlying claim for the malpractice suit. If the Whitener law firm knowingly or recklessly led Encinias to believe that his suit was still viable, then Encinias might be entitled to nominal or punitive damages. Encinias requested punitive damages in his complaint, so these damages should not come as a surprise to Whitener.

**{23}** Whitener's sole defense to the misrepresentation claim before this Court is that the Encinias family knew the statute of limitations, so they could not have been misled. However, Whitener specifically (and erroneously) assured the family in October 2006 that the statute of limitations had *not* run, and it is reasonable for clients to assume that they can rely on their attorneys' legal advice. On this record, Encinias has raised a genuine issue of material fact about whether Whitener fraudulently misrepresented the viability of Encinias's underlying claim.

9

**{24}**    Encinias also alleges that Whitener committed misrepresentation by failing to inform the Encinias family in May 2006 that the firm had not done any work on Encinias's case. Encinias's mother states in an affidavit that she approached Whitener in April 2006, several months after retaining Whitener, and asked what progress the firm had made on Encinias's case. Mrs. Encinias states that Whitener asked her to fill out new paperwork, including a new fee agreement. Encinias now alleges that the firm lost the family's paperwork and had done no work until after April 2006. Failure to inform Encinias that the firm had done no work on the case for three months could constitute fraudulent misrepresentation, if it was done knowingly or recklessly. *See generally* UJI 13-1633 (listing elements of fraudulent misrepresentation).

**{25}**    The failure to disclose also might constitute negligent misrepresentation under Restatement (Second) of Torts § 552 (1977). *See Stotlar v. Hester*, 1978-NMCA-067, ¶ 13, 92 N.M. 26, 582 P.2d 403 (adopting the Restatement standard); *see also* UJI 13-1632 NMRA, Comm. Commentary. If Whitener had informed Encinias that the firm had lost Encinias's paperwork and had done no work on his case, Encinias could have retained a different attorney and filed a complaint before the statute of limitations ran. Therefore, Whitener's failure to disclose that no work had been done damaged Encinias's ability to pursue his case against the school district. Encinias has raised a genuine issue of material fact about whether his claim would have been successful, and he can seek compensatory damages from Whitener for the loss of the underlying case.

**CONCLUSION**

**{26}**    We hold that Encinias has raised a genuine issue of material fact as to whether there was a dangerous condition on the premises of Robertson High School that would have waived immunity under Section 41-4-6(A). Therefore, summary judgment in favor of Whitener is inappropriate. Furthermore, we hold that Encinias should be able to pursue his misrepresentation claim, both because he might have suffered actual damages as a result of Whitener's misrepresentations and because fraudulent misrepresentation does not require actual damages. For these reasons, we reverse the Court of Appeals and vacate the district court's grant of summary judgment so that Encinias may pursue his misrepresentation claim against Whitener.

**{27}    IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Justice**

 **WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____

**RICHARD C. BOSSON, Justice**


_____

**CHARLES W. DANIELS, Justice**


_____

**TIMOTHY L. GARCIA, Judge**
**Sitting by designation**

**Topic Index for** *Encinias v. Whitener Law Firm, P.A.*, **No. 33,874**

**CIVIL PROCEDURE**
Summary Judgment

**GOVERNMENT**
Sovereign Immunity

**NEGLIGENCE**
Third Parties

**TORTS**
Assault and Battery
Legal Malpractice
Misrepresentation
Premises Liability
Statute of Limitations
Tort Claims Act