This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**IVAN FRAIRE,**

Plaintiff-Appellant,

v.  **NO. 33,964**

**BELEN CONSOLIDATED SCHOOL DISTRICT,**

Defendant-Appellee,

and

**TYLER EAST,**

Defendant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Violet C. Otero, District Judge**

Martinez, Hart & Thompson, P.C.
Bruce E. Thompson
Albuquerque, NM

for Appellant

Narvaez Law Firm, P.A.
Henry F. Narvaez
Carlos E. Sedillo
Albuquerque, NM

for Appellee

Tyler East
Albuquerque, NM

Pro Se

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}    Plaintiff Ivan Fraire appeals the district court's summary judgment in favor of Defendant-Appellee, Belen Consolidated School District (the District) on his negligence claim for injuries he suffered when he was attacked by another student at Belen High School. The district court held that the District could not be liable for Plaintiff's injuries as a matter of law because any negligent acts by the District fell outside the scope of the State's waiver of its sovereign immunity under the Tort Claims Act (the TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2015). Recent precedent from our New Mexico Supreme Court instructs our analysis, and we reverse.

**BACKGROUND**

{2}    On April 20, 2009, Tyler East, a senior at Belen High School, approached his wrestling coach, Lee Chaves, to discuss an administrative "graduation hold" that prevented East from graduating the following month unless he first returned his wrestling uniform to Chaves. East located Chaves at the school's football field, where

Chaves told East to wait for him to finish "setting [his] class up." We note that at the time, East was training and indeed had signed a professional contract to compete as a Mixed Martial Arts (MMA) fighter. As well, the skill set that East possessed professionally had in the past been applied within the public school setting: he'd been suspended from Los Lunas High School for separate instances in which he fought with a schoolmate and threatened physical harm upon one of his teachers. Additionally, East was given unspecified discipline when he shoved another student after he transferred to Belen High School.

{3}     "As a matter of protocol," Chaves promptly called school security in an effort to "make sure . . . East would go back to class" once their discussion had concluded. The record on appeal suggests that before security could arrive and before Chaves could address the topic of graduation with East, East began to assault Plaintiff.[1] Chaves and the other coaches who were present restrained East and had security take him to the principal's office, but not before Plaintiff suffered significant injuries as a result of being beaten by East. East was placed on suspension by the school administration.

{4}     Plaintiff sued East for negligence, assault, and battery, and those claims ended in a default judgment, which is not at issue in this appeal. Plaintiff also brought a

---

[1]According to one witness, East had recently lost his first professional fight and had been teased by Plaintiff regarding his unsuccessful MMA debut.

negligence claim against the District, contending that it was liable for failing to take reasonable steps to prevent the assault. The District filed a motion for summary judgment, arguing that any negligence on the part of the District in failing to prevent Plaintiff's injuries fell outside of the waiver of immunity in the TCA for damages caused by the "negligence of public employees . . . in the operation or maintenance of any building, public park, machinery, equipment or furnishings." Section 41-4-6(A). The district court agreed, and the only issue before us on appeal is whether the district court was correct in its ruling.

**DISCUSSION**

**A.     Standard of Review**

{5}     The appellate courts "review the district court's decision to grant summary judgment de novo." *Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 14, 143 N.M. 142, 173 P.3d 749. Generally, New Mexico courts view summary judgment with disfavor, preferring trials to disposition as a matter of law. *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 8, 148 N.M. 713, 242 P.3d 280. Accordingly, we review the facts and make all reasonable inferences from the record in favor of the nonmoving party. *T.H. McElvain Oil & Gas Ltd. P'ship v. Benson-Montin-Greer Drilling Corp.*, 2015-NMCA-004, ¶ 19, 340 P.3d 1277, *cert. granted*, 2014-NMCERT-012, 344 P.3d 988. We will affirm an order granting summary judgment only if the evidence in the

4

record, viewed in this light, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA.

**B.    Genuine Issues of Fact Preclude Summary Judgment on Plaintiff's Negligence Claim Against the School District**

{6}    Section 41-4-4(A) of the TCA provides that "[a] governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by . . . Sections 41-4-5 through 41-4-12[.]" The primary issue in this appeal is whether the injuries suffered by Plaintiff at the hands of East fall within the TCA's waiver of immunity for "damages . . . caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." Section 41-4-6(A). As we explain below, we view our Supreme Court to have abandoned any distinction between the government's waiver of its sovereign immunity under Section 41-4-6 and premises liability for private parties in general. *See Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶¶ 14-18, 310 P.3d 611. Because there are genuine issues of fact over whether the District breached its duty as a landowner to Plaintiff as an invitee and whether the breach was the legal cause of Plaintiff's injuries, summary judgment was inappropriate.

{7}    In *Encinias*, our Supreme Court held that governmental liability under Section

5

41-4-6 turns on whether "the facts of a case . . . support a finding of liability against a private property owner." 2013-NMSC-045, ¶ 15; *see id.* ¶ 9 ("[W]e infer that the waiver of liability in Section 41-4-6(A) incorporates the concepts of premises liability found in our case law."). We take this language to mean what it plainly states: if genuine issues of material fact would preclude summary judgment on a premises liability claim against a private defendant, then summary judgment is also inappropriate when the defendant is a public entity. Turning to this question, a single standard of reasonable care under the circumstances applies to landowners or permitted occupants. *See Ford v. Bd. of Cty. Comm'rs*, 1994-NMSC-077, ¶ 12, 118 N.M. 134, 879 P.2d 766. And with respect to injuries caused by "the harmful acts of third persons[,]" a landowner may be found liable "if, by the exercise of reasonable care, the proprietor could have discovered that such acts were being done or about to be done, and could have protected against the injury by controlling the conduct of the other patron." *Encinias*, 2013-NMSC-045, ¶ 16 (internal quotation marks and citation omitted).

**{8}** "The duty of ordinary care applies unless the owner/occupier can establish a policy reason, unrelated to foreseeability considerations, that compels a limitation on the duty or an exemption from the duty to exercise ordinary care." *Rodriguez v. Del Sol Shopping Ctr. Assocs.*, 2014-NMSC-014, ¶ 5, 326 P.3d 465. A " 'no duty' " or

6

" 'limit[ed] . . . duty' " determination cannot rest on "an improbable or remote nature of risk[,]" however, because any analysis of this question which takes into account the likelihood of harm "usurp[s] the jury's role in determining legal cause and breach." *Nat'l Roofing, Inc. v. Alstate Steel, Inc.*, 2016-NMCA-020, ¶ 3, 366 P.3d 276 (citing *Rodriguez*, 2014-NMSC-014, ¶¶ 18-19, 22), *cert. denied*, 2016-NMCERT-001, 370 P.3d 473. Summary judgment on a negligence claim is appropriate only " 'in exceptional cases, when an articulated countervailing principle or policy warrants denying or limiting liability in a particular class of cases,' " *Rodriguez*, 2014-NMSC-014, ¶ 13 (quoting Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 7(b) (2010) (alteration omitted)), or when there is simply no evidence that could support a plausible inference in the plaintiff's favor on the jury questions of breach and legal cause. *See Rodriguez*, 2014-NMSC-014, ¶ 24.

{9} Although *Encinias* appears to lay to rest any argument that a ewal entity's liability for the harmful actions of third persons under Section 41-4-6 is any different from the liability of a private property owner's, it is difficult at first blush to square this conclusion with the cases *Encinias* itself cites as good law. For example, *Encinias* states that *Espinoza v. Town of Taos*, 1995-NMSC-070, ¶¶ 4, 16, 120 N.M. 680, 905 P.2d 718, may be cited for the proposition that "a municipal summer camp's failure to supervise young children at a playground did not waive the town's immunity from

suit [under Section 41-4-6]." *Encinias*, 2013-NMSC-045, ¶ 12. But *Espinoza* states that "[e]ven if the Town of Taos arguably had a duty in this case, there can be no liability for any breach of that duty because immunity has not been waived." 1995-NMSC-070, ¶ 14.

{10} More pertinent to our analysis in this case, *Encinias* also reaffirms the "central premise" of *Pemberton v. Cordova*, 1987-NMCA-020, ¶ 6, 105 N.M. 476, 734 P.2d 254, that "[t]here can be no waiver under Section 41-4-6(A) without a dangerous condition on the premises, and a single act of student-on-student violence does not render the premises unsafe." *Encinias*, 2013-NMSC-045, ¶ 13 (discussing *Pemberton*). But like *Espinoza*, *Pemberton* also adopted the distinction between premises liability and waiver under Section 41-4-6 that *Encinias* expressly rejected. *See Pemberton*, 1987-NMCA-020, ¶ 5 ("Plaintiffs ask us to expand the scope of [Section 41-4-6] to include negligent supervision of students. Where the areas of waiver of immunity are specifically presented, we have no authority to read other exceptions into the statute.").

{11} The District maintains that under *Pemberton*, even if there are genuine issues of fact over whether it breached its duty of care to Plaintiff and that Plaintiff's injuries were foreseeable, all student-on-student batteries as a matter of law fall outside the scope of the Section 41-4-6(A)'s waiver of immunity. We disagree. To be sure,

8

*Pemberton* recognizes a distinction between ordinary premises liability and waiver under Section 41-4-6(A). *See Pemberton*, 1987-NMCA-020, ¶ 5. But *Encinias* expressly rejects this distinction. *See* 2013-NMSC-045, ¶ 15. Under *Encinias*, *Pemberton* is now limited to factual circumstances where a "single act of student-on-student violence" is the "only evidence" offered to support a plaintiff's premises liability claim because such an isolated act of student-on-student violence does not create a dangerous condition on the school premises unless the evidence also establishes that the school reasonably could have discovered that such harmful acts were about to occur and could have protected third parties against the resulting injury. *Encinias*, 2013-NMSC-045, ¶ 13. Thus *Pemberton* and *Rodriguez* carve out narrow circumstances supporting TCA immunity as a matter of law and apply where (1) public policy warrants denying or limiting liability in exceptional cases; or (2) no evidence exists to support the reasonable discovery that the dangerous condition is about to occur and can reasonably be prevented to protect others from injury. *See Rodriguez*, 2014-NMSC-014, ¶¶ 5, 13, 24; *Encinias*, 2013-NMSC-045, ¶ 13. Consequently, we reject the District's argument that all student-on-student violence is excluded from the purview of Section 41-4-6A's waiver of immunity.

{12}     The District next argues that we should hold that it did not owe Plaintiff a duty of care. The District notes that it was required by statute to give first "priorit[y] for

9

enrollment" to East, who resided within the geographical limits of the school district. *See* NMSA 1978, § 22-1-4(A), (E)(3) (2003, amended 2015). And because East's last violent altercation was more than twelve months before his transfer to Belen High School, the school could not use his prior acts as a basis for denying his admission. *See* § 22-1-4(E)(5)(b) ("Grounds for denial of enrollment or re-enrollment shall be limited to . . . a student's behavior in another school district or private school in this state or any other state during the preceding twelve months that is detrimental to the welfare or safety of other students or school employees."). The District suggests that the school's statutory obligation to admit students like East with a known propensity for violence furnishes a "countervailing principle or policy [that] warrants denying or limiting liability" for negligence because any harmful acts caused by such students stems from this obligation. *Rodriguez*, 2014-NMSC-014, ¶ 13 (internal quotation marks and citation omitted).

{13}     This argument is difficult to square with Encinias, in which our Supreme Court held that a school could indeed be held liable for injuries caused by the violence of another student. 2013-NMSC-045, ¶ 18. To be sure, *Encinias* did not consider whether or not a school district's duty of care is changed when the danger to other students arises from its admission of a student as opposed to its negligent failure to monitor an area with a past history of student-on-student violence. But eliminating a school's

duty of care to its students based on a distinction between an area with a history of violence and a student with a propensity of violence goes to the foreseeability of the harm and whether it is reasonable to expect a defendant—here the District—to prevent it, both of which are jury questions under *Rodriguez*. *See* 2014-NMSC-014, ¶ 19 ("If a jury is persuaded that [the p]laintiffs are asking too much of [the d]efendants, the jury will decline to hold [the d]efendants liable, not because no duty of ordinary care was owed, but because even having the duty of ordinary care, [the d]efendants either acted reasonably under the circumstances or their breach of duty did not legally cause the [plaintiff's] injuries[.]"). That the District was required by statute to admit East as a student is evidence that it could not reasonably be expected to prevent East's assault, but under *Rodriguez* mere compliance with a statute or other rule is not "conslusive evidence that someone has exercised ordinary care." *Id.* ¶ 17.

**{14}** The District next appears to suggest that we should limit *Encinias* to its facts by holding that a school may only be found liable where there is evidence that student-on-student violence was foreseeable in a geographic area. In the District's words, "[i]n *Encinias*, the focus was on the area, and not the specific student combatants." The District contends that because the football field was not a "geographic 'hot zone[,]'" they cannot be held liable for East's assault on Plaintiff and summary judgment in the District's favor was appropriate. But whether the "dangerous condition" is

11

characterized as an unmonitored area of the school with a history of attacks or as the foreseeable danger caused by a particular student with a propensity for violence, *Encinias* held that evidence the school knew or should have known of the danger requires a trial. *See Encinias*, 2013-NMSC-045, ¶ 17 ("[The government] can be liable for the violent acts of a third party if the government reasonably should have discovered and could have prevented the incident."). Limiting the District's liability based on whether the evidence of foreseeability relates to a geographic area of the school grounds or instead relates to the propensity of the attacker revives the distinction between ordinary tort liability and statutory waiver under the TCA that *Encinias* rejects. *See Rodriguez*, 2014-NMSC-014, ¶ 19 ("Courts should not engage in weighing evidence to determine whether a duty of care exists or should be expanded or contracted—weighing evidence is the providence of the jury; instead, courts should focus on policy considerations when determining the scope or existence of a duty of care."). Moreover, this distinction would require us to weigh the evidence and make our own assessment that East's assault was or was not remote, which *Rodriguez* expressly precludes. *See id.*

{15} The only remaining path the District advances in support of affirming the district court's summary judgment order is for us to conclude no evidence gives rise to a genuine issue of fact on the elements of Plaintiff's premises liability claim against

12

the school district. Plaintiff argues that the following evidence gives rise to a genuine issues of fact: (1) East's disciplinary record at Los Lunas High School indicates that he was handed a short-term suspension for fighting with a schoolmate on March 22, 2006, and a long-term suspension during the fall term of the 2006-2007 school year after he was arrested for threatening a teacher; (2) A Belen High School assistant principal testified that the school was not aware of East's disciplinary record when he transferred, and that had he been aware of East's history, he would have placed East on a discretionary "strict" behavioral contract; (3) Testimony that East had "pushed" another student at Belen High School on the last day of school in 2008; (4) A security officer's note on an incident report concerning East's assault on Plaintiff stating that East was "not at his assigned class, was at a class he was not supposed to be at[;]" and (5) The transcript of a 911 call following East's assault of Plaintiff in which a school security officer asks for two police officers to be dispatched to the school because East "can be a little violent" and "when [East] gets pissed off, he loses it[.]" Based on this evidence, we agree with Plaintiff and hold that a jury could reasonably conclude that the District breached its duty of care to Plaintiff in failing to act to prevent the attack, and that the school's omissions could have contributed to Plaintiff's injuries. *See Encinias*, 2013-NMSC-045, ¶ 13. In other words, a jury could conclude that the District's employees were aware of East's propensity for violence, and could have

13

taken measures that would have prevented East's assault of Plaintiff.

{16} Regarding the absence of a strict behavioral contract, the District argues that "strict" contracts are imposed as a matter of discretion, and the school's failure to place such a contract on East, even if negligent, is the kind of "administrative decision" that does not fall within Section 41-4-6(A)'s waiver of immunity. *See Archibeque v. Moya*, 1993-NMSC-079, ¶ 8, 116 N.M. 616, 866 P.2d 344 ("To read Section 41-4-6 as waiving immunity for negligent performance of administrative functions would be contrary to the plain language and intended purpose of the statute."). But again, the question of governmental liability after *Encinias* is simply a question of ordinary negligence on a premises liability theory. The fact that a jury could just as reasonably conclude that the District did all it could be expected to do in the situation, and could not have reasonably foreseen East's sudden assault on Plaintiff, does not alter that which *Encinias* requires. Characterizing the District's acts and omissions as "administrative decisions" that do not breach its duty of care to Plaintiff or are too remote from Plaintiff's injuries to give rise to premises liability would require us to revive the distinction between ordinary liability in tort and the waiver set out in Section 41-4-6(A) or undertake our own evaluation of the reasonableness of the school district's conduct and the foreseeability of Plaintiff's injuries. Once material evidence exists to support discovery and a reasonable

14

opportunity to prevent injury to others, *Rodriguez* and our Supreme Court's controlling interpretation of the TCA in *Encinias* forbid appellate courts from undertaking such a weighing of the evidence on appeal.

**CONCLUSION**

{17}    The district court's order granting the school district's motion for summary judgment is reversed, and this case is remanded for further proceedings.

{18}    **IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**


**WE CONCUR:**


_____
**LINDA M. VANZI, Judge**


_____
**TIMOTHY L. GARCIA, Judge**