792 P.2d 36

**Fred M. CALKINS, Jr., Personal Representative of the Estate of Daniel Enriquez, Deceased, Petitioner,**

v.

**The COX ESTATES, Respondent.**

No. 18157.

Supreme Court of New Mexico.

May 2, 1990.

Stephen Durkovich, David A. Archuleta, Albuquerque, for petitioner.

Butt, Thornton & Baehr, P.C., John A. Klecan, Albuquerque, for respondent.

## OPINION

BACA, Justice.

Petitioner, personal representative of the estate of Daniel Enriquez, brought a wrongful death suit against respondent, the decedent's landlord, alleging negligence. The decedent, an eight-year old boy, was killed when he was struck by an automobile on a frontage road in the vicinity of the apartment complex where he lived. Petitioner appeals the trial court's grant of respondent's motion for summary judgment, which was affirmed by the court of appeals. The motion was based on the contention that the lessor had no duty to maintain a fence located on his property. The court of appeals affirmed on the ground that the lessor did not owe a duty to the child.

This court granted certiorari, and we address the following issue: whether a lessor owes a duty of care to his tenants to maintain the common areas of the leased premises—in this case a playground adjacent to an area leading to a highway—in a reasonably safe condition. We agree with petitioner that a duty was owed by respondent to decedent to maintain the common area, and we reverse and remand for trial in a manner consistent with this opinion.

Because this case is before this court on a grant of summary judgment, we must consider the affidavit evidence submitted by petitioner in a light most favorable to him, resolving all inferences and disputes of evidence in his favor, for the purposes of this appeal. *See, e.g., Knapp v. Fraternal Order of Eagles,* 106 N.M. 11, 12, 738 P.2d 129, 130 (Ct.App.1987).

Daniel Enriquez, the decedent, lived with his grandparents in an apartment complex owned by respondent. Behind the complex, on land owned and maintained by respondent, was a playground built by respondent for the use of the children residing in the complex. Enriquez was playing in this area with a friend on the day in question. Located behind the play area was an arroyo, which led to the Metropolitan Flood Control ditch, and subsequently to an unfenced road adjoining Interstate 25, approximately 945 feet away. The playground was separated from the arroyo by a fence built by the landlord, but the fence had fallen into disrepair. Children habitually crossed through the fence to play in the outer environs. Young Enriquez, too, took advantage of the opportunity to escape through a hole in the fence into the world beyond, ultimately giving his life to the traffic on the frontage road.

■ This case raises issues of duty and proximate cause. Integral to both elements is a question of foreseeability. In determining duty, it must be determined that the injured party was a foreseeable plaintiff—that he was within the zone of danger created by respondent's actions; in other words, to whom was the duty owed? In determining proximate cause, an element of foreseeability is also present—the question then is whether the injury to petitioner was a foreseeable result of respondent's breach, i.e. what manner of harm is foreseeable? Both questions of foreseeability are distinct; the first must be decided as a matter of law by the judge, using established legal policy in determining whether a *duty* was owed petitioner, and the second, *proximate cause*, is a question of fact.

■ As defined by New Mexico law, "negligence encompasses the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." *Ramirez v. Armstrong*, 100 N.M. 538, 541, 673 P.2d 822, 825 (1983). A duty to an individual is closely intertwined with the foreseeability of injury to *that individual* resulting from an activity conducted with less than reasonable care by the alleged tort-feasor. *See id.; Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99 (1928). "If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant." *Ramirez*, 100 N.M. at 541, 673 P.2d at 825.

■ A plaintiff must show that defendant's actions constituted a wrong against him, not merely that defendant acted beneath a required standard of care and that plaintiff was injured thereby. He must show that a relationship existed by which defendant was legally obliged to protect the interest of plaintiff. This concept limits liability for negligent conduct—a potential plaintiff must be reasonably foreseeable to the defendant because of defendant's actions. *See Palsgraf*, 248 N.Y. at 342, 162 N.E. at 100.

■ The court must determine *as a matter of law* whether a particular defendant owes a duty to a particular plaintiff.

*Schear v. Board of County Comm'rs*, 101 N.M. 671, 672, 687 P.2d 728, 729 (1984). The existence of a duty is a question of policy to be determined with reference to legal precedent, statutes, and other principles comprising the law. W.P. Keeton, D.B. Dobbs, R.E. Keeton & D.G. Owen, *Prosser and Keeton on the Law of Torts* § 37 (5th ed. 1984) (hereinafter cited as *Prosser & Keeton*);[1] *see Ramirez*, 100 N.M. at 541, 673 P.2d at 825.

■ This difficult question, whether respondent had a duty toward the young child, can be answered with reference to our statutes and well-established common law traditions. The issue presented involves the duty of a landowner to maintain a common area. Specifically, the question is whether respondent, who undertook to provide a playground for children in a potentially hazardous area, was under a legal obligation to maintain the playground in a reasonably safe condition, so that children playing on the playground would be unable to escape from the playground and potentially be injured beyond its confines.

Petitioner has asked us to define respondent's duty in terms of the general negligence standard of care—the landlord owes his tenants a duty to protect them from foreseeable harm caused by unsafe conditions on the landlord's property. He requests that the duty be framed as requir-

---

[1] Duty thus defines the legal obligations of one party toward another and limits the reach of potential liability. The obligations of a party may be formulated in one of two distinct categories: An affirmative duty to conform one's actions to a specific standard of care vis-a-vis specific individual or group of individuals may be found in a specific statutory or common-law standard that creates the affirmative duty toward a party, or the standard of care may be found in a general negligence standard, requiring the individual to use reasonable care in his activities and dealings vis-a-vis society as a whole. In this regard, the potential tortfeasor's duty, and ultimately his potential liability, is manifest with regard to the foreseeability that his actions conducted below the standard of care will injure the particular victim.

This concept has been expressed as a distinction between the use of duty as an affirmative or defensive argument. *See Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 734 P.2d 1326 (1987) (en banc). When the duty arises because of a statutory or common-law relationship mandating an obligation to a party, it may be termed an affirmative duty. When the term "duty" is used in this manner to refer to a legally obligatory course of conduct toward a certain type of individual, it affirmatively serves the injured party as the basis for his claim of liability. *See id.* 734 P.2d at 1328. All that is required for a court to conclude that a defendant owed a plaintiff a duty is that the plaintiff be a person foreseeably within the scope of defendant's duty to use reasonable care. On the other hand, when the term is invoked in a suit alleging common-law negligence based on a claim that the defendant has acted in a manner falling below the general standard of care, it is being used defensively to limit the potential scope of a defendant's liability. In essence, it involves a claim that the defendant cannot be liable to a plaintiff, despite admittedly negligent actions, because the plaintiff was not a party that foreseeably could be harmed by those activities.

ing the landlord to take reasonable steps, commensurate with foreseeable harm, to protect the safety of his tenants. In terms of the present case, he contends that the jury should be allowed to balance the reasonableness and costs of respondent maintaining, or even erecting, a fence against the foreseeability of resulting harm.

 Petitioner correctly states the law as it concerns the general negligence standard of care and determination of duty. New Mexico law recognizes that there exists a duty assigned to all individuals requiring them to act reasonably under the circumstances according to the standard of conduct imposed upon them by the circumstances. *See, e.g., Huntsman v. Smith,* 62 N.M. 457, 463, 312 P.2d 103, 107 (1957) (duty to repair wall if a reasonably prudent person would anticipate a risk to safety); *Krametbauer v. McDonald,* 44 N.M. 473, 104 P.2d 900 (1940) (bus driver assumed duty to use reasonable care to protect children in her charge). The determination of duty in any given situation involves an analysis of the relationship of the parties, the plaintiff's injured interests and the defendant's conduct; it is essentially a policy decision based on these factors that the plaintiff's interests are entitled to protection. *Prosser & Keeton, supra,* § 53. Our courts have answered the questions of whether, under certain circumstances, a duty of care is owed, making further analysis unnecessary. *See, e.g., Lopez v. Maez,* 98 N.M. 625, 651 P.2d 1269 (1982) (establishing that a tavern owner owes a duty to third parties that may be harmed by his inebriated patrons); *Srader v. Pecos Constr. Co.,* 71 N.M. 320, 378 P.2d 364 (1963) (duty owed to wife of worker on construction site based on ordinance requiring floor openings be covered). Our precedent in these areas has established that there is a policy in our law to protect certain interests, and thus the balancing

implicit in the legal determination of a duty has been established by our legal tradition.

In the case presented to us today, it is not necessary for us to balance the policy interests to determine whether defendant owed plaintiff a duty. Reference to our statutes and common law establishes that plaintiff was owed a duty based on the landlord-tenant relationship. Thus, we find that the present case does not require us to frame respondent's duty as broadly as requested by petitioner.[2]

 It is well established in New Mexico jurisprudence that, although a landlord is under no affirmative obligation to inspect or maintain areas over which control has been relinquished, a landowner is responsible for maintaining, in a reasonably safe condition, areas that expressly or impliedly are reserved for the common use of some or all of his tenants. NMSA 1978, § 47-8-20(A)(3) (Cum.Supp.1989) (obliging an owner to "keep common areas of the premises in a safe condition"); *Hogsett v. Hanna,* 41 N.M. 22, 63 P.2d 540 (1936); *Torres v. Piggly Wiggly Shop Rite Foods, Inc.,* 93 N.M. 408, 410, 600 P.2d 1198, 1200 (Ct.App.), *cert. denied,* 93 N.M. 683, 604 P.2d 821 (1979); SCRA 1986, 13–1314, 1315; *see* Restatement (Second) of Torts, § 360 (1965).

 On the facts as presented for this appeal, it is apparent that the play area in the apartment complex in which Enriquez lived, which was owned by respondent, was an area reserved for the common use of the tenants. As such, respondent was obligated to maintain and repair it. Respondent chose to erect a fence and he reaped the economic benefits from providing a fenced play area at the complex. Undoubtedly at least one purpose of the fence was to keep children playing behind the complex in the area and out of the arroyo. Every landlord is not required, as a matter of law, to fence in his property or

---

2. A comparison with *Huntsman* is particularly instructive on this point. A similar issue was presented by *Huntsman:* Did the owner of a fence have a duty to keep it in repair so as not to injure the property of his neighbor? However, in that case, there was no legal duty established by the relationship between the parties,

and the court applied general tort standards to find a duty based on the foreseeability of injury to a reasonably prudent person. In the present case, the relationship is one of landlord and tenant, and our law has defined the duty of care owed.

to insure the safety of his tenants' children.[3] However, when a landowner undertakes to provide a common area for the use of his tenants, he undertakes to maintain it in a reasonably safe condition. Parents have the primary obligation of ensuring the safety and well-being of their children, but they are also entitled to rely on their landlord's taking reasonable precautions to maintain the common areas of the property in a reasonably safe condition. *See Moreno v. Stahmann Farms, Inc.,* 693 F.2d 106, 109 (10th Cir.1982).[4]

Respondent contends that he cannot be liable for injuries occurring beyond his property's borders—his duty is only to keep the property safe so that invitees are not injured on the premises. He maintains that the scope of the duty must be limited to the scope of the landlord-tenant relationship, and that a landlord is not required to become an insurer of his tenants.[5]

■ We do not interpret the law of landlord-tenant and negligence so rigidly. The scope of the landlord's duty, as described previously, is to maintain the common areas of his property in a reasonably safe condition. However, injury resulting from a breach of that duty need not occur on the property for the lessor to be liable, if the breach proximately causes the harm. We are not requiring a landlord to protect his tenants from dangers beyond the premises—we merely require that he keep his premises in a reasonably safe condition. If the injury occurs outside the boundaries of the property, but a jury can find that the landlord's breach was responsible for the injury, we find no reason to deny liability as a matter of law. Having established a duty, the foreseeability of injury determines the scope of the duty. As an Arizona court recently stated: "The fact that [plaintiff's] injury occurred beyond the boundaries of the leased premises may well be relevant in determining whether the Landlord acted reasonably, but it does not compel the conclusion that the Landlord owed [plaintiff] no duty of care in the first place." *Udy v. Calvary Corp.,* 162 Ariz. 7, 12, 780 P.2d 1055, 1060 (Ct.App.1989); *see also Limberhand v. Big Ditch Co.,* 706 P.2d 491 (Mont.1985).

■ Accordingly, we hold that respondent-landlord's duty was to maintain the common areas of his property in a safe condition, as a reasonably prudent person

---

**3.** Our statement should not be interpreted as meaning that a lessor can evade liability in a situation similar to that presented today by refusing to erect a fence if one is required, or by tearing down a fence if one already exists. Absent a statutory or common law duty, a landlord's duty is to act reasonably under the circumstances.

**4.** *Moreno* is particularly instructive. The court relied on a master-servant relationship rather than a landlord-tenant relationship in finding a duty of care, the duty being "to protect the servant from injury," and because the employer had chosen to provide housing, the duty required him to provide reasonably safe housing. 693 F.2d at 108. This standard is similar to the one we establish today regarding common areas under a landlord's control—the lessor must maintain the premises in a reasonably safe condition. In *Moreno,* the court determined that, under the circumstances, where the employer knew that children lived in the dwelling and that the dwelling was near an irrigation ditch, the reasonably safe standard required the employer to erect a fence.

**5.** The district court decided the summary judgment motion on the issue of duty. The court of appeals' decision, and the respondent in his brief, however, appear to have confused the question of duty with that of proximate cause. Once a duty is established, either by reference to statutory or common law duties or by reference to the general negligence standard, the question of the scope of that duty is a question of proximate cause.

The court of appeals expressed the issue of duty as whether the landlord's failure to maintain the fence subjected it to liability for injury suffered by the tenant who left the play area through a hole in the fence and traveled some 945 feet across property not owned by the landlord to be struck by a vehicle on the frontage road. The court held that the defendant's duty did not extend to a harm occurring so far from its property, basing this conclusion on a narrow reading of the landlord's duty and public policy.

The error inherent in this formulation of the issue is apparent. The landlord's duty was to maintain the common areas in a reasonable condition—it is not to protect the tenants from harm. However, the question whether the landlord should be subject to liability for the tenant's injury depends on whether the breach of duty was the proximate cause of injury; it is not a question of whether the scope of the duty extends to off-premises injury.

would under the circumstances. Statute dictates that a landlord has a responsibility to maintain the common areas reserved to the use of the tenants. This responsibility creates a duty to use care for the benefit of the tenants. The limits of this duty should be determined not with reference to geographical boundaries, but with reference to the foreseeability of injury to the petitioner from the unsafe condition.

■ The legal question of duty for the court to decide then becomes whether the plaintiff in a case may foreseeably be injured by a breach of the duty. In this case, young Enriquez was a foreseeable plaintiff. The landlord was aware that children played in the area—he erected a play-

ground for them; and Enriquez was foreseeably playing in the area—he lived in the building. Thus, it was reasonably foreseeable that, because of respondent's failure to exercise reasonable care in maintaining the fence, Enriquez would be harmed.[6]

■ Although it is apparent that respondent was under a duty to use due care with regard to Enriquez, it is yet to be determined whether respondent breached his duty and did not use due care in maintaining the common area. It may have been reasonable, under the circumstances, balancing the costs of maintaining the fence with the foreseeable harm, for the landlord not to have fixed the holes.

6. Respondent also maintains that we should uphold the summary judgment below because its alleged negligence could not be the proximate cause of decedent's injury as a matter of law because it was not a substantial factor in producing the result. He argues that the chain of causation urged by petitioner is too tenuous to support the claim, and that because decedent's injury was so remote geographically from respondent's alleged breach of duty, the court did not err in making a threshold determination that the breach could not be a proximate cause of the injury. He contends that the fence was far removed from the accident site, that other routes besides the hole in the fence provided access to the arroyo and onto the highway, and that the fence could not be a legal cause of injury because it only led to the arroyo, which is not a hazard.

Respondent's contentions fail for several reasons. First, New Mexico does not apply the substantial factor test as a test of proximate cause; the question is one of foreseeability. Second, remoteness is not a geographic determination; it requires a finding that the alleged cause was not a probable or foreseeable result of a breach. Third, the arroyo may not have been the hazard, but petitioner offered evidence as to the chain of causation that may indicate that the decedent's trail to the road may have been foreseeable. This is not a situation where a judge can determine that reasonable minds cannot differ; the discussion below indicates that the evidence was controverted.

Petitioner submitted, as part of his motion in opposition to summary judgment, an affidavit from an expert witness, which indicated that the fence was required to enclose the playground. The immediately adjacent arroyo leading to the flood control ditch and onto the frontage road and freeway represented a danger that would foreseeably attract children to potential injury. The affidavit indicated that, although the distance of the hazards from the playground was relatively great, this did not diminish the poten-

tial danger to the children using the area. Young children, initially attracted to the playground, would inexorably be attracted to and proceed through the breach in the fence, on through the natural attractions of the arroyo, the flood control ditch, the frontage road, and onto the freeway. Thus, because of the hole in the fence, the natural curiosity of young children leads them, with some degree of certainty, inevitably to the hazard of the freeway, despite its distance from the apartment complex. Additionally, evidence indicated that children often used the holes in the fence as a route of access into the adjacent arroyo.

Because of the natural progression of these hazards, extending from the hole in the fence, petitioner contends that the danger was reasonably foreseeable as a result of the landlord's negligent maintenance of the fence and the playground common area. Petitioner further contends that the accident involving Enriquez occurred in just such a foreseeable manner. Enriquez, with a friend, crawled through the hole in the fence, proceeding down the arroyo, through the flood control ditch, and down the frontage road to his demise.

A court may decide questions of negligence and proximate cause, if no facts are presented that could allow a reasonable jury to find proximate cause, i.e. if a reasonable jury could not find that respondent reasonably could foresee that Enriquez may climb through the fence and be injured as a result. *See, e.g., Bouldin v. Sategna,* 71 N.M. 329, 378 P.2d 370 (1963) (deciding that, as a matter of law, an automobile owner cannot reasonably foresee car theft, and therefore his negligence in leaving his keys in the car is not the proximate cause of subsequent negligent driving by the thief). In this case, petitioner offered evidence that the manner of harm was reasonably foreseeable. Whether the injury was too remote, or whether intervening, superseding acts will be determined to have caused the injury, is thus a question for the jury.

Whether respondent's conduct constituted a breach of his duty to maintain common areas in a reasonably safe condition is a question of fact that the jury must decide on remand. *See Cross v. City of Clovis,* 107 N.M. 251, 255, 755 P.2d 589, 593 (1988). In determining whether respondent acted reasonably or breached his duty, it may be relevant to the jury that the injury occurred off the premises. However, the location of the accident is not relevant to the question of duty.[7]

In accordance with the foregoing opinion, we remand to the district court for a determination of this matter on the merits. This court has already resolved the question of the duty owed by the respondent-landlord to the petitioner-tenant. Respondent owes a duty to use reasonable care in maintaining the common areas of the apartment complex in a reasonably safe condition. The district court will consequently present to the jury two factual issues: (1) breach of duty—whether, under the circumstances, respondent breached his duty when he did not repair the holes in the fence; and (2) proximate cause—whether the injury to Enriquez was a natural and probable result of respondent's lack of maintenance of the fence in the common area. If the jury finds that the lessor did not act negligently, of course, it will not have to reach the question of proximate cause.

IT IS SO ORDERED.

SOSA, C.J., and MONTGOMERY and WILSON, JJ., concur.

RANSOM, J., dissents.

RANSOM, Justice (dissenting).

My colleagues rationalize that failure to repair holes in a playground fence gave rise to a fact issue as to breach of the landlord's well-recognized duty to maintain common areas in a reasonably safe condition, that this duty of ordinary care was owed to a child tenant as a matter of law, and that the linchpin of liability is whether an injury was caused as a natural and probable result of any such breach of that duty. The opinion specifically introduces foreseeability as an integral element of proximate causation, and, in that connection, uses the phrase "natural and probable result" in place of "natural and continuous sequence." See SCRA 1986, 13–305 (proximate cause defined). Thus, the clear foreseeability of the child leaving the premises and eventually meeting his death on some street becomes the *factual test* of both breach of duty to maintain the common area[1] and proximate causation. More precisely, I believe, this case turns on the presence or absence *in law* of a duty to the child to maintain the fence to avoid foreseeable risk of harm nearly one-fifth of a mile from the apartment complex.

As an aside, I must disagree with my colleagues that foreseeability is an integral element of proximate cause. Foreseeability is an element of proximate cause only when it may be said that an independent intervening act has produced that which was not foreseeable as a result of an earlier act or ommission. SCRA 1986, 13–305, 13–306. I do not see that issue in the instant case. Petitioner, on the other hand, would pose the issue as whether the breach of the landlord's duty to maintain the fence was too remote as a matter of law *to*

---

**7.** One further issue for the jury to consider in their determination of breach of duty is the open and obvious nature of the hole in the fence. It may be found that Enriquez' grandmother was or should have been as aware of the danger as the landlord. However, although the open and obvious nature of the danger is one factor to be considered in determining whether the landlord was negligent, it is not determinative of the issue, and does not, without more, remove responsibility from the landlord. *See Moreno,* 693 F.2d at 108–09; *Udy,* 780 P.2d at 1062; Restatement (Second) of Torts § 360 comment b (1965). This would present a situa-

tion of comparative negligence, which is an issue of fact for the jury. *City of Albuquerque v. Redding,* 93 N.M. 757, 759–61, 605 P.2d 1156, 1158–60 (1980).

**1.** The majority opines, "[I]t is yet to be determined whether respondent breached his duty and did not use due care in maintaining the common area. It may have been reasonable, under the circumstances, balancing the costs of maintaining the fence with the foreseeable harm, for the landlord not to have fixed the holes."

*constitute a proximate cause* of the child's death on the frontage road. However, I do not consider remoteness to be a proximate cause issue either. *See Kelly v. Montoya,* 81 N.M. 591, 470 P.2d 563 (Ct.App.1970). Remoteness delimits the risk of injury that reasonably may give rise to the existence of duty. I concur with the court of appeals. The frontage road hazard was too remote as a matter of law to constitute a risk of injury reasonably giving rise to any duty to maintain the playground fence.

It may be unreasonable and, therefore, negligent not to avoid a foreseeable risk of harm unless the risk is remote as a matter of law. Remoteness, however, is not a fact. It is a policy. Failure to maintain a fence, foreseeability of a risk of harm, and proximate causation may give rise to genuine issues of fact; but those issues are not material to a determination of whether there exists in law a duty to avoid that which may be remote as a matter of public policy. Said another way, it is not unreasonable in law to fail to avoid that which is remote.

In general, the author of the majority opinion is correct in stating that, "In determining duty, it must be determined that the injured party was a foreseeable plaintiff—that he was within the zone of danger created by respondent's actions; in other words, to whom was a duty owed?" This *foreseeability* issue is, indeed, the teaching of the majority opinion authored by Chief Justice Cardozo in *Palsgraf.* No peril to Helen Palsgraf was foreseeable from the conduct of the railroad's guard in pushing aboard the passenger from whom was dislodged an apparently innocuous but fateful package of fireworks. Helen Palsgraf was injured many feet away by scales thrown down by the shock of the exploding fireworks.

I agree with the majority in the instant case that whether a duty was owed must be decided as a matter of law using existing legal policy. The crux of the duty analysis that is required, however, is not a factual foreseeability determination, but rather it is a legal policy determination. This distinction is critical. In New Mexico,

as stated in the majority opinion, we define negligence as an act foreseeably involving an unreasonable risk to that individual who complains of injury. *See also,* SCRA 1986, 13–1601. Foreseeability is most often a question of fact and only rarely, as in *Palsgraf,* may foreseeability be considered a false jury issue. More often, duty as a matter of law turns not on an absence of the fact issue of foreseeability, but rather the policy issue of whether it is reasonable to impose a duty to avoid a risk of injury which, although foreseeable, is remote.

Declining to decide *Palsgraf* on the absence of foreseeability as a fact, Justice Andrews, dissenting, would have decided the case on proximate causation, which to him meant that, "because of convenience, of public policy, of a rough sense of justice, the law arbitrarily [decides whether] to trace a series of events beyond a certain point. This is not logic. It is practical politics." *Id.* Except where foreseeability is factually absent, as in *Palsgraf,* I would utilize this policy concept in deciding duty as a matter of law, unfettered by proximate cause principles that have their own factual application. I would call this policy concept the doctrine of remoteness. Under the doctrine of remoteness, foreseeability is not controlling. Remoteness and foreseeability are separate and divergent roads by which we approach the question of duty.

In *Ramirez v. Armstrong,* 100 N.M. 538, 673 P.2d 822 (1983), observing that the interest to be protected was more important than foreseeability in the recognition of a cause of action for negligent infliction of emotional distress, this Court said of *Palsgraf:*

> Duty and foreseeability have been closely integrated concepts in tort law since the court in *Palsgraf v. Long Island Railroad Co.,* 248 N.Y. 339, 162 N.E. 99 (1928) stated the issue of foreseeability in terms of duty. If it is found that a plaintiff, and injury to that plaintiff, were foreseeable, then a duty is owed to that plaintiff by the defendant. Dean Prosser defines duty, in negligence cases, as "an obligation to which the law will give recognition and effect, to con-

form to a particular standard of conduct toward another." W. Prosser, The Law of Torts § 53 (4th ed. 1971). He recognizes, however, that "there is nothing sacred about 'duty,' which is nothing more than a word, and a very indefinite one, with which we state our conclusion." *Id.* § 43. The key to Dean Prosser's definition is the requirement that the obligation of the defendant be one to which the law will give recognition and effect. *Id.* at 541, 673 P.2d at 825. The grant or denial in law of recognition and effect to an obligation, as to bystanders subject to emotional distress, is a matter of public policy driven by the doctrine of remoteness. The doctrine is not necessarily dependent upon considerations of time and space; although, in the instant case, our policy determination involves those considerations. Nor is foreseeability controlling. It is in the denial of obligation as a matter of fact that foreseeability and proximate cause are controlling.

While purporting to acknowledge the possibility of a duty to maintain the playground fence to avoid foreseeable risk of harm to tenant children attracted to adjoining property, the court of appeals finds no duty when the attraction is too remote. Factually, the court of appeals notes, plaintiff does not dispute that the young boy had to traverse the following path to reach the spot where the accident occurred: First, he had to walk 94 feet to the arroyo, then proceed along the arroyo approximately 559 feet to reach a diversion channel. Upon reaching the diversion channel, the boy then had to travel 294 feet along the channel, at which point he was required to scale a ditch bank approximately 20 feet high, finally arriving at the shoulder of the frontage road where he was hit by a car.

As a matter of policy, it strikes me as it did the trial court and the court of appeals that it would be unreasonable to impose a duty on the part of the landlord to safeguard eight-year-old tenants from risks of injury on streets not immediately adjoining the property. There is no showing of any affirmative conduct of the landlord, relied upon by the tenants, that gives rise to a duty to restrain the child from exploring the wonders of a world one-fifth of a mile from the apartment complex. Again, this is not a case of a youngster chasing a ball from an unfenced playground onto the street, or of a youngster attracted through a hole in the fence to a nuisance existing on adjacent property. As a matter of public policy, absent an affirmative undertaking relied upon by the tenants, it simply is not reasonable to require a landlord to restrain a third or fourth grade boy from leaving his apartment complex.