# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2023-NMCA-030

Filing Date: November 28, 2022

No. A-1-CA-36256

MAUREEN A. SANDERS, as
Personal Representative of the
ESTATE OF KATHERINE PAQUIN,

Plaintiff-Appellant,

v.

NEW MEXICO CORRECTIONS
DEPARTMENT, GREGG MARCANTEL
and CATHLEEN CATANACH,

Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Valerie Huling, District Judge

Kennedy Kennedy & Ives
Adam C. Flores
Laura Schauer Ives
Albuquerque, NM

for Appellant

Butt, Thornton & Baehr, P.C.
Agnes Fuentevilla Padilla
Felicia Boyd
Rheba Rutkowski
Sarah L. Shore
Albuquerque, NM

for Appellees

## OPINION

**DUFFY, Judge.**

**{1}**     Plaintiff Maureen A. Sanders brought a wrongful death lawsuit as personal representative of the Estate of Katherine Paquin after Paquin was killed by Christopher Blattner, an inmate who had been erroneously released from custody. Plaintiff sued the New Mexico Corrections Department (NMCD), NMCD Secretary Gregg Marcantel, and Bureau Records Chief Cathleen Catanach (collectively, Defendants) on the theory that Defendants had negligently released Blattner before he had completed the full term of his sentence—approximately three years early, according to Plaintiff. Defendants moved for summary judgment, arguing they were immune from suit under the New Mexico Tort Claims Act (TCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2020). Plaintiff argued that her claims for Defendants' negligence were actionable under two of the TCA's waivers of immunity: (1) the building waiver, § 41-4-6(A), and (2) the law enforcement waiver, § 41-4-12.[1] The district court granted Defendants' motion.

**{2}**     We reverse the district court's ruling as to the building waiver but affirm the court's ruling as to the law enforcement waiver.

## BACKGROUND

**{3}**     Plaintiff alleged in her amended complaint that "Paquin's killing was the direct result of errors made by [NMCD] and . . . [its] employees, resulting in the premature release of a dangerous inmate named Christopher Blattner." Blattner began serving time in 2009 for drug trafficking convictions and should have remained incarcerated until the fall of 2015. He was instead released in February 2012. Once released, he connected with Paquin, who was sixty-two years old and suffered from mental health issues. Paquin's neighbors reported seeing Blattner at Paquin's home frequently. In August 2012, approximately six months following Blattner's release, a missing person report was filed for Paquin. In the days that followed, Blattner made numerous withdrawals from Paquin's bank account totaling approximately $63,000. Police officers obtained arrest warrants for Blattner and his wife, and after a standoff, arrested Blattner. Eventually, Blattner's wife told police that Blattner had killed Paquin and hid her body. Blattner later pled no contest to voluntary manslaughter for Paquin's death.

**{4}**     Plaintiff alleged that shortly after Paquin's death, "NMCD officials conceded there had been an error and . . . Blattner had been released early." Plaintiff also alleged that in July 2012—approximately one month *before* Paquin was killed—NMCD Secretary Marcantel acknowledged that NMCD had a problem with accounting for inmate sentences and stated there would be a statewide audit of inmate records to evaluate NMCD's procedures. In a later statement, Secretary Marcantel allegedly reported that the audit had revealed a more significant issue than was previously known and characterized the deficient recordkeeping as "a public safety issue."

---

[1]The Legislature amended Section 41-4-12 in 2020. We apply the prior version of the statute that was in effect when the conduct underlying Plaintiff's claim occurred in 2012. All citations in this opinion to Section 41-4-12 are to the 1977 version.

**{5}** Plaintiff brought two claims against Defendants under the TCA, one under Section 41-4-6(A) for negligent operation of the NMCD facility from which Blattner had been released, and another under Section 41-4-12 for negligence of law enforcement officers.[2] Defendants filed a motion for summary judgment, arguing they were immune from suit under the TCA. They asserted that the building waiver was inapplicable because the conduct at issue amounted to the negligent performance of an administrative function for which there is no waiver. They also asserted that the law enforcement waiver was inapplicable because Defendants were not "law enforcement officers." In response, Plaintiff argued that the building waiver applied because Defendants' failure to follow statutes and policies governing inmate release resulted in the early release of violent inmates from NMCD before they had served the full measure of their sentence, which created a dangerous condition for the public at large. Plaintiff maintains that this conduct constituted negligence in the operation of a correctional facility and was therefore sufficient to establish a waiver under Section 41-4-6(A). Plaintiff also argued that a claim under the law enforcement waiver, § 41-4-12, was actionable against NMCD.

**{6}** The district court granted summary judgment in favor of Defendants on both issues. Addressing Plaintiff's first argument, the district court stated that "[t]here is no allegation in the complaint that the wrongful death occurred in NMCD's facilities, or property surrounding and linked to NMCD's facilities, or that NMCD Defendants had control and a legal interest in the property where the crime occurred. Thus, the waiver of immunity set out in Section 41-4-6(A) does not apply." Regarding Plaintiff's second argument, the district court agreed with Defendants that Plaintiff had not shown that a negligent NMCD employee was a "law enforcement officer" as required to establish waiver under Section 41-4-12. Plaintiff appeals.

## STANDARD OF REVIEW

**{7}** "Summary judgment is proper if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. "We view the facts in a light most favorable to the party opposing the motion for summary judgment and draw all reasonable inferences in support of a trial on the merits. We also review the applicability of the TCA de novo." *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 7, 140 N.M. 205, 141 P.3d 1259 (alterations, internal quotation marks, and citation omitted).

## DISCUSSION

**{8}** "The TCA grants all government entities and their employees general immunity from actions in tort, but waives that immunity in certain specified circumstances." *Id.* ¶ 8. The specific waivers of immunity are contained in Sections 41-4-5 to -12 of the TCA. *See Encinias v. Whitener Law Firm, P.A.*, 2013-NMSC-045, ¶ 9, 310 P.3d 611. Plaintiff's wrongful death suit invoked two of the TCA's waiver provisions: Section 41-4-

---

2Plaintiff also brought a loss of consortium claim against Defendants. This claim was dismissed by the district court and is not before us on appeal.

6 (the building waiver), which waives the state's immunity for injuries resulting from the negligent operation or maintenance of state buildings, and Section 41-4-12 (the law enforcement waiver), which waives the state's immunity for injuries arising from the negligence of law enforcement officers under certain circumstances. In this appeal, we review the district court's conclusion that neither waiver is applicable.

## I. The Building Waiver Under Section 41-4-6(A)

**{9}** The building waiver in Section 41-4-6(A) permits tort claims against governmental entities for "damages resulting from . . . wrongful death . . . caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building." *See Upton*, 2006-NMSC-040, ¶ 8. This Section has been termed "a 'premises liability' statute," *Encinias*, 2013-NMSC-045, ¶ 9 (internal quotation marks and citation omitted), and has historically been interpreted broadly to waive immunity where "an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." *Id.* ¶ 10 (internal quotation marks and citation omitted). Our Supreme Court has made clear that "[t]he waiver applies to more than the operation or maintenance of the physical aspects of the building," and includes failures to follow appropriate safety protocols. *Upton*, 2006-NMSC-040, ¶¶ 9, 12-13.

**{10}** In the proceedings below, Plaintiff grounded her building waiver claim in the theory that Defendants negligently operated the prison facilities that housed Blattner by failing to follow statutes and policies governing the release of prisoners, thereby creating a dangerous condition—the early release of dangerous inmates—that affected the public at large. When Defendants moved for summary judgment, they argued that "calculating and managing an inmate's term of confinement" are administrative functions for which Section 41-4-6(A) does not waive immunity. The district court did not address the parties' arguments on the building waiver. Instead, the court concluded that Section 41-4-6(A) does not waive Defendants' immunity as a matter of law because the wrongful death did not occur on or adjacent to property owned or controlled by NMCD.

**{11}** For the reasons that follow, we conclude that Section 41-4-6(A) does not limit the waiver to claims for injuries occurring on or adjacent to government-controlled property. We reverse the district court's contrary conclusion, and, as we explain, decline Defendants' invitation to affirm the district court as right for any reason on the basis that Blattner's release was the result of a discrete administrative decision for which there is no waiver.

### A. The Waiver of Immunity in Section 41-4-6(A) Is Not Limited to Injuries Occurring on or Adjacent to Defendants' Property

**{12}** The first issue is narrow: whether, as a matter of law, there is no waiver under Section 41-4-6(A) for Plaintiff's claims because the death did not occur on or adjacent to NMCD facilities. In our Supreme Court's last opinion addressing the building waiver, the Court observed that "[i]n enacting the TCA, the Legislature expressed an intent to waive

the state's immunity in situations that would subject a private party to liability under our common law." *Encinias*, 2013-NMSC-045, ¶ 15. Effectuating that intent, the Court held that "the waiver of liability in Section 41-4-6(A) incorporates the concepts of premises liability found in our case law," and that "the facts of a case will support a waiver under Section 41-4-6(A) if they would support a finding of liability against a private property owner." *Encinias*, 2013-NMSC-045, ¶¶ 9, 15. This language of incorporation and equivalence effectively collapses the distinction between the government's waiver of immunity under Section 41-4-6(A) and premises liability for private parties in general, subject only to limitations found in case law. *See, e.g.*, *Encinias*, 2013-NMSC-045, ¶¶ 12-14 (detailing previously recognized limitations on the waiver of immunity under Section 41-4-6(A)). Consequently, Plaintiff's building waiver claim should be evaluated in light of common law premises liability principles. *See Encinias*, 2013-NMSC-045, ¶¶ 9, 15.[3]

**{13}** New Mexico's common law has long recognized that premises liability claims can lie for injuries occurring outside a property's boundary. "[T]he traditional rule [is] that one who owns or controls property has a duty to refrain from creating or permitting conditions on such property that will foreseeably lead to an unreasonable risk of harm to others beyond the property's borders." *Stetz v. Skaggs Drug Ctrs., Inc.*, 1992-NMCA-104, ¶ 9, 114 N.M. 465, 840 P.2d 612; *see also Bober v. N.M. State Fair*, 1991-NMSC-031, ¶ 12, 111 N.M. 644, 808 P.2d 614 (explaining that all landowners have a duty "to exercise ordinary care to avoid creating, or permitting, an unreasonable risk of harm to others" regardless of the identity of the person injured or the fact that the injury occurred outside the property boundary). "[I]njury resulting from a breach of that duty need not occur on the property for the [defendant] to be liable." *Calkins v. Cox Estates*, 1990-

---

3We reject Defendants' contrary argument regarding the analytical framework governing our review. Defendants rely on *Kreutzer v. Aldo Leopold High School*, 2018-NMCA-005, ¶¶ 44, 65, 409 P.3d 930, for the proposition that a plaintiff does not establish waiver by merely alleging negligence under a premises liability theory, and that waiver must be analyzed separately from the underlying merits of the claim. In context, however, *Kreutzer* does not vary from the general proposition articulated in *Encinias*—that the facts will support a finding of waiver if they would support a finding of liability against a private property owner, unless the claim is subject to a limitation recognized in our case law. *See Encinias*, 2013-NMSC-045, ¶¶ 9, 15; *see also Kreutzer*, 2018-NMCA-005, ¶ 53 (noting that these limits include negligent supervision and discrete acts of violence). *Kreutzer* applied the very limitations recognized in *Encinias* to conclude that the plaintiffs' facts did not suffice to establish a waiver because they demonstrated no more than a claim for negligent supervision based on a discrete act of student-on-student violence in the parking lot of a school. *Kreutzer*, 2018-NMCA-005, ¶¶ 53, 79. The Court also noted the unremarkable proposition that the merits of a claim are immaterial if the allegations do not fall within the set of claims enumerated in the statute. *Id.* ¶ 47.

Likewise, to the extent Defendants and *Kreutzer* relied on *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶¶ 11, 17, 397 P.3d 1279, for the notion that the "TCA waiver [is] an issue determined before consideration of the elements of the claims based on traditional tort concepts," *Kreutzer*, 2018-NMCA-005, ¶ 44, *Thompson* does not stand for the proposition that the building waiver must be evaluated separately from the merits of the underlying claim. *See* 2017-NMSC-021, ¶¶ 11, 17 (evaluating a loss of consortium claim brought under the law enforcement waiver, § 41-4-12, and concluding that such a claim was expressly permitted by the statutory language of that provision). Nothing in *Thompson* requires a stepwise analysis for claims brought under the building waiver, nor does *Thompson* preclude an examination of the merits of a claim where, as here, they are integral to the applicability of the waiver in the first place. *See Encinias*, 2013-NMSC-045, ¶ 15. Accordingly, Defendants' reliance on *Kreutzer* and *Thompson* is inapposite here.

NMSC-044, ¶ 16, 110 N.M. 59, 792 P.2d 36. "If the injury occurs outside the boundaries of the property, but the jury can find that the [defendant's] breach was responsible for the injury, [there is] no reason to deny liability as a matter of law." *Id.* So too with premises liability claims brought against the state under the building waiver. "Like common-law premises liability, the waiver in Section 41-4-6(A) is not limited to injuries occurring on the defendant's property." *Encinias*, 2013-NMSC-045, ¶ 10; *see also Bober*, 1991-NMSC-031, ¶¶ 1, 16, 27, 30 (holding that injuries occurring beyond the property boundary are matters of foreseeability and the owner (or other occupier or possessor) may be held liable if those injuries proximately result from the owner's breach of the duty of care).

{14}    Defendants acknowledge that Section 41-4-6(A) does not contain a situs of the injury requirement and that waiver under Section 41-4-6(A) is not limited to injuries occurring on their property. They nevertheless maintain that the district court's conclusion was sound because "[i]n cases applying [the building waiver] where injury has occurred beyond the bounds of premises operated/maintained by public employees, the plaintiff *used* the government premises and was injured on premises *in close proximity* to the government-operated/maintained premises." However, the authority on which Defendants rely does not lend itself to such a general rule.

{15}    Of the cases Defendants refer to, only *Encinias* and *Bober* involved off-premises injuries, and in *Bober*, the injured plaintiff had never used the premises. *See* 1991-NMSC-031, ¶¶ 1-2, 30 (holding that the state fair was not immune from liability where the plaintiff alleged the fair had failed to properly control traffic leaving the fairgrounds, resulting in a car crash that injured the plaintiff, who was a passenger in a car traveling on a roadway bordering the fairgrounds). That leaves only *Encinias*, where our Supreme Court expressly held that (1) the building waiver is not limited to claims for injuries occurring on the defendant's property, and (2) the building waiver specifically incorporates common law premises liability principles. 2013-NMSC-045, ¶¶ 9-10; *see id.* ¶ 18 (holding that the plaintiff had stated a viable claim under the building waiver for tortious conduct that occurred outside of school property in a "hot zone" for student violence and there was a genuine issue of fact as to whether the school exercised reasonable care to discover and prevent the incident). As we have discussed, the common law does not limit liability claims to injuries occurring on or immediately adjacent to the defendant's property. We accordingly find no basis to draw a geographical limitation on the building waiver from these cases, as Defendants propose.

{16}    Rather than fashioning a bright-line limitation that would cut off liability for off-premises injuries as a matter of law, our courts have treated the geographical location of the injury as a matter of foreseeability, relevant to breach of duty and causation—matters traditionally left for the jury's resolution. *See Calkins*, 1990-NMSC-044, ¶¶ 16, 19 (stating that "[t]he fact that plaintiff's injury occurred beyond the boundaries of the . . . premises may well be relevant in determining whether the [landowner] acted reasonably" (alteration, internal quotation marks, and citation omitted)); *Bober*, 1991-NMSC-031, ¶ 13 (holding that breach of duty is determined "not with reference to physical locations, but rather with reference to the foreseeability of harm from the

hazardous condition" (internal quotation marks and citation omitted)). *Calkins* is illustrative. In *Calkins*, a young child left the apartment complex where he lived through a hole in a fence near the apartment's playground and was struck and killed by an automobile on a frontage road one-fifth of a mile away. 1990-NMSC-044, ¶¶ 1, 4; *id.* ¶¶ 21, 28 (Ransom, J., dissenting). In rejecting the respondent landlord's argument that "he cannot be liable for injuries occurring beyond his property's borders," *id.* ¶ 15, the majority opinion reaffirmed the longstanding principle that a landowner has a duty to exercise reasonable care to maintain his property in a reasonably safe condition, and held there is "no reason to deny liability as a matter of law" for injuries occurring outside the boundaries of the property if the injury is caused by the landowner's breach. *Id.* ¶¶ 15-16. The Court remanded the case to the district court because "it is yet to be determined whether [the landowner] breached his duty of care," noting that "[i]n determining whether [the landowner] acted reasonably or breached his duty, it may be relevant to the jury that the injury occurred off the premises. However, the location of the accident is not relevant to the question of duty." *Id.* ¶ 19.

{17}     Notably, Justice Ransom dissented, arguing that the remoteness of a risk of harm should be viewed as a policy matter that delimits the existence of duty. *Id.* ¶¶ 22-23 (Ransom, J., dissenting). In his view, as a matter of public policy, it was not "reasonable to impose a duty to avoid a risk of injury which, although foreseeable, is remote." *Id.* ¶ 25 (Ransom, J., dissenting). He would have courts determine the existence of a duty in each case by evaluating whether a "hazard was too remote as a matter of law to constitute a risk of injury." *Id.* ¶¶ 22, 25 (Ransom, J., dissenting). Under the facts presented in *Calkins*, he would have concluded it was unreasonable to impose a duty on a landowner to safeguard a child from "risks of injury on streets not immediately adjoining the property." *Id.* ¶ 29 (Ransom, J. dissenting).

{18}     While the dissent in this case appears to endorse the same approach, our Supreme Court has expressly eschewed it. The Court revisited Justice Ransom's concept of remoteness in *Rodriguez v. Del Sol Shopping Center Associates, L.P.*, 2014-NMSC-014, ¶ 13, 326 P.3d 465, and made clear that "foreseeability, improbability, or remote nature of the risk" were not appropriate bases for deciding that a defendant does not have a duty or that an existing duty should be limited. *Id.* ¶ 13; *see id.* ¶¶ 1, 4 (holding that a duty of ordinary care applies unless a property owner establishes a specific policy reason, unrelated to foreseeability considerations, that compels a limitation on or an exemption from the duty to exercise ordinary care).[4] Remoteness and

---

4*Rodriguez* states the general rule of duty in premises liability cases, i.e., that an owner/occupier owes a duty of ordinary care regarding the condition of and the activities carried out on the property. *Id*. ¶ 5. This includes "the duty to exercise ordinary care to prevent harmful conduct from a third person, even if the third person's conduct is intentional. The duty of ordinary care applies unless the owner/occupier can establish a policy reason, unrelated to foreseeability considerations, that compels a limitation on the duty or an exemption from the duty to exercise ordinary care." *Id*. (citation omitted). New Mexico courts have not previously had occasion to consider a landowner's duty for intentional conduct by a third person under the circumstances presented here, though New Mexico has recognized an affirmative duty to control in other factual contexts based on a special relation between the parties. *See, e.g., Karbel v. Francis*, 1985-NMCA-030, ¶¶ 6-10, 103 N.M. 468, 709 P.2d 190 (noting that "[t]he duty of one who takes charge of a third person whom he knows or should know to be likely to cause harm to others, if not controlled, is the

foreseeability are, instead, "fact-intensive inquir[ies] relevant only to breach of duty and legal cause considerations." *Rodriguez*, 2014-NMSC-014, ¶ 1; *see Morris v. Giant Four Corners, Inc.*, 2021-NMSC-028, ¶¶ 10-12, 498 P.3d 238 (setting forth the framework for evaluating duty and emphasizing that "[w]hen assessing the existence or scope of a duty, a court does not analyze foreseeability or weigh the evidence").

**{19}**    Thus, in line with our common law jurisprudence, the geographic and temporal remoteness of the injury in this case are matters of foreseeability, relevant to whether Defendants acted reasonably under the circumstances or legally caused injury to a particular person. *See Rodriguez*, 2014-NMSC-014, ¶ 4; *Calkins*, 1990-NMSC-044, ¶¶ 16-17. While matters of foreseeability are classically fact-intensive and generally require the jury's consideration, courts still have the ability to decide "whether a defendant did or did not breach the duty of ordinary care as a matter of law, or that the breach of duty did not legally cause the damages alleged in the case." *Rodriquez*, 2014-NMSC-014, ¶ 24. That is, "[t]he judge can enter judgment as a matter of law . . . if the judge concludes that no reasonable jury could decide the breach of duty or legal cause questions except one way." *Id.* In this case, however, foreseeability was not raised by the parties and we see no indication that the district court judge engaged in the sort of analysis necessitated under *Rodriquez* to determine there was no breach of duty or no legal cause as a matter of law. We decline to do so in the first instance, and express no opinion as to whether Defendants acted reasonably under the circumstances or legally caused Paquin's death.

**{20}**    In sum, as for the applicability of the building waiver, we find no basis to conclude there is a geographical limit on the location of an injury that would preclude waiver as a matter of law, as the district court concluded. In this case, Defendants are not immune from liability due solely to the fact that Paquin's death did not occur in or on property linked to NMCD facilities. We hold that summary judgment was improperly granted on this ground.

**B.    We Decline to Affirm Based on Defendants' "Discrete Administrative Function" Argument**

---

duty to exercise reasonable care to prevent the person from doing harm" (citing Restatement (Second) of Torts §§ 315, 319 (1965)); *see also* Restatement (Second) of Torts § 315 (stating that "[t]here is no duty to control the conduct of a third person as to prevent him from causing physical harm to another unless a special relation exists between the actor and the third person [that] imposes a duty upon the actor to control the third person's conduct"); Restatement (Second) of Torts § 319 (stating that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm"). Our review of the summary judgment record has not unearthed any argument that Defendants owed no duty to Paquin, nor have they argued on appeal that policy reasons unrelated to foreseeability considerations exist that would justify limiting the scope of their duty to exercise ordinary care. *See Rodriguez*, 2014-NMSC-014, ¶ 5; *see also Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243 ("In reviewing an order on summary judgment, we examine the whole record on review."). Consequently, we express no opinion about the existence or scope of Defendants' duty in this case. *See Rodriguez*, 2014-NMSC-014, ¶ 16.

**{21}** Defendants ask us to affirm the grant of summary judgment as right for any reason, invoking the proposition that "the TCA does not waive immunity for a single, discrete administrative decision affecting only a single person, as opposed to a dangerous condition affecting the general public." *Upton*, 2006-NMSC-040, ¶ 17. This was the sole argument raised in Defendants' motion for summary judgment on the building waiver claim, but the district court did not reach the argument in its order granting the motion. As we explain, we decline to affirm on this basis.

**{22}** The "discrete administrative function" exception first appeared in *Archibeque v. Moya*, 1993-NMSC-079, ¶ 8, 116 N.M. 616, 866 P.2d 344, where "a prison administrator negligently failed to check a list of names before placing [the plaintiff] into an area of the prison with his known enemies." *Upton*, 2006-NMSC-040, ¶ 20. The plaintiff was assaulted that night. *Archibeque*, 1993-NMSC-079, ¶ 2. Our Supreme Court declined to equate this with negligent operation of a building under Section 41-4-6(A) because the administrator "was performing an administrative function associated with the operation of the corrections system." *Archibeque*, 1993-NMSC-079, ¶ 8. The Court concluded—without analysis—that "Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions." *Archibeque*, 1993-NMSC-079, ¶ 8. The *Archibeque* Court went on to explain that even though the administrator's "misclassification of [the plaintiff] put him at risk, the negligence did not create an unsafe condition on the prison premises *as to the general prison population*." *Id.* ¶ 11 (emphasis added); *see id.* ¶ 14 n.3 (observing that "[w]hile a segment of the population at risk might justify waiver of immunity under Section 41-4-6, a situation in which a single inmate is put at risk is not comparable"). Chief Justice Ransom wrote separately, emphasizing the difference between "cases involving only a 'discrete administrative decision' that did not make the premises any more dangerous and cases demonstrating 'a general condition of unreasonable risk from negligent security practices,' for which the TCA does waive immunity." *See Upton*, 2006-NMSC-040, ¶ 20 (quoting *Archibeque*, 1993-NMSC-079, ¶¶ 17, 18 (Ransom, C.J., specially concurring)).

**{23}** That general condition of unreasonable risk surfaced the following year in *Callaway v. New Mexico Department of Corrections*, 1994-NMCA-049, ¶ 18, 117 N.M. 637, 875 P.2d 393, when prison officials allowed known gang members with a prior history of violence against other inmates to mingle with the general prison population, "thereby creating a dangerous condition based on more than just a single administrative decision affecting only one inmate as in *Archibeque*." *Upton*, 2006-NMSC-040, ¶ 20 (distinguishing *Callaway* from *Archibeque*); *see Callaway*, 1994-NMCA-049, ¶¶ 4, 18. This Court distinguished *Archibeque* on its facts because the officials' negligence in *Callaway* had put the prison's general population at risk. *Callaway*, 1994-NMCA-049, ¶ 18. This Court ultimately concluded that the plaintiff had successfully stated a claim under Section 41-4-6(A) because the defendants "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable." *Callaway*, 1994-NMCA-049, ¶ 19; *see also Garner v. Dep't of Corrs.*, 1995-NMCA-103, ¶ 8, 120 N.M. 547, 903 P.2d 858 (observing that "in *Archibeque*, the

danger was unique to Archibeque and its realization thus a function of Archibeque's classification, [whereas] in . . . *Callaway* . . ., there was a generally present danger to members of the prison population at large").

**{24}**  In this case, it is undisputed that Blattner was released from a NMCD facility before he was eligible. Defendants characterize Blattner's release as the product of alleged negligence in "obtaining and reviewing Blattner's inmate file to calculate the time remaining on his sentence and determine whether he could be [released]." Relying on *Archibeque*, Defendants maintain these actions are administrative functions associated with the operation of the corrections system.

**{25}**  Plaintiff responded below by detailing how Defendants failed to follow prisoner release and documentation policies requiring NMCD staff to: (1) ensure the accuracy and proper maintenance of inmate files, (2) closely monitor the files of inmates with pending charges, (3) document all contacts with detaining authorities, (4) review files for charging documents and untried indictments, and (5) conduct complete file audits within sixty days of an inmate's release as part of the release process, among other things. Plaintiff submitted evidence to establish that NMCD staff did not comply with these directives in conjunction with Blattner's release. Plaintiff also submitted evidence indicating the premature release of inmates at NMCD was not isolated, and pointed to late-disclosed discovery apparently showing that NMCD had erroneously released hundreds of inmates prematurely. Plaintiff, relying on *Callaway*, argued that the early release of inmates created a dangerous condition for the public at large and, as a result, NMCD's actions in this case do not amount to a discrete administrative decision.

**{26}**  In their right for any reason argument on appeal, Defendants do not address *Callaway*; nor do they explain, in light of the evidence presented by Plaintiff, why this case ought to be governed by *Archibeque* and not *Callaway*. Moreover, whether the record is sufficient to establish a "general condition of unreasonable risk" or to otherwise demonstrate a disputed issue of material fact are fact-dependent inquires. Such inquiries are not well suited to the application of the right for any reason doctrine, particularly in the absence of a well-developed argument from the appellee. *See Freeman v. Fairchild*, 2018-NMSC-023, ¶ 30, 416 P.3d 264 ("When applying the right for any reason rationale, appellate courts must be careful not to assume the role of the trial court by delving into fact-dependent inquiries." (alteration, internal quotation marks, and citation omitted)); *Atherton v. Gopin*, 2015-NMCA-003, ¶ 36, 340 P.3d 630; *see also State v. Serna*, 2018-NMCA-074, ¶¶ 32-34, 429 P.3d 1283 (declining to decide an undeveloped, right for any reason argument); *State v. Randy J.*, 2011-NMCA-105, ¶¶ 27-30, 150 N.M. 683, 265 P.3d 734 (same). As in *Freeman*, we conclude "[t]he district court is the appropriate forum to determine the merits of [Defendants'] motion for summary judgment in the first instance." 2018-NMSC-023, ¶ 35. We therefore decline Defendants' invitation to affirm on right for any reason grounds.

## II.    The Law Enforcement Waiver Under Section 41-4-12

**{27}** Plaintiff also brought a claim under the law enforcement waiver in Section 41-4-12, which waives the state's immunity for

> personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

**{28}** In their motion for summary judgment, Defendants argued that none of the named defendants, including NMCD, were law enforcement officers under the TCA's definition of the term. *See* § 41-4-3(D) (stating that "'law enforcement officer' means a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes"). In response, Plaintiff made clear that her claims for damages under Section 41-4-12 are limited to NMCD and do not include any of the individually-named Defendants. Plaintiff then argued that NMCD was operating as a law enforcement officer under the TCA.

**{29}** The district court correctly recognized that an entity like NMCD can be sued under Section 41-4-12 of the TCA if a plaintiff identifies: "(1) a negligent public employee who meets one of the waiver exceptions under Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee." *Abalos v. Bernalillo Cnty. Dist. Atty. Off.*, 1987-NMCA-026, ¶ 23, 105 N.M. 554, 734 P.2d 794. "If a public employee meets an exception to immunity, then the particular entity that supervises the employee can be named as a defendant in an action under the Tort Claims Act." *Id.*; *see also Lopez v. Las Cruces Police Dep't*, 2006-NMCA-074, ¶¶ 9, 19, 139 N.M. 730, 137 P.3d 670 (stating that "a TCA plaintiff is not required to name an individual public employee as a defendant" in order to maintain an action against an entity). Nevertheless, the district court ruled that Defendants were entitled to summary judgment because Plaintiff had not identified a negligent NMCD employee who was a law enforcement officer.

**{30}** On appeal, Plaintiff argues that she specifically identified a NMCD employee—Gloria Chavez—who was "derelict in fulfilling her responsibilities to ensure that Blattner was serving the full measure of his sentence." Even accepting that as true, Plaintiff did not argue below or present evidence tending to establish that Chavez was a law enforcement officer. To do so, Plaintiff needed to show that Chavez's "principal duties, those duties to which [she] devote[d] a majority of [her] time, be of a law enforcement nature." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶¶ 8, 12, 121 N.M. 646, 916 P.2d 1313.

**{31}** Having reviewed the record, we agree with the district court's assessment that Plaintiff's argument focused on whether "NMCD itself meets the necessary definition of a law enforcement officer." The same is true on appeal—Plaintiff argues that "there is sufficient evidence from which a reasonable jury could find that NMCD was operating as a law enforcement officer for purposes of the TCA." This is insufficient to meet the burden under *Abalos*. *See* 1987-NMCA-026, ¶ 23. We therefore affirm the district court's ruling that Plaintiff has not established waiver under Section 41-4-12.

**CONCLUSION**

**{32}** For the foregoing reasons, the district court's summary judgment in favor of Defendants is reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

**{33}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**I CONCUR:**

**JENNIFER L. ATTREP, Judge**

**HANISEE, Chief Judge (dissenting in part and concurring in part).**

**{34}** I concur in the majority opinion's interpretation and application of Section 41-4-12 (the law enforcement waiver) but respectfully disagree with the majority's analysis as it relates to Section 41-4-6(A) (the building waiver). In my view, what once was the latter such *exception* to public immunity from tort liability under the TCA now swallows the rule. Worse yet, it has done so not by legislative enactment, that source from where the TCA itself comes, but by our appellate courts. More specifically, I disagree with the majority's conclusion that there is "no basis to conclude there is a geographical limit on the location of the injury that would preclude [the building] waiver as a matter of law." *Maj. op.* ¶ 20. Thus, I dissent from Part I., Subsection A., of the majority opinion.

**{35}** My concern with the majority's conclusion today relates to the continued expansion—potentially, in this instance, as the majority remands for a second determination as to the building waiver's applicability—of public liability for faraway torts, at least as measured by distance and time, from any claimed occurrence of negligence related to a government building. To be fair, the majority opinion flows from our Supreme Court's interpretation of the building waiver as "broadly . . . waiv[ing] immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." *Encinias*, 2013-NMSC-045, ¶ 10 (internal quotation marks and citation omitted). True as well, the building waiver now "applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building." *Id.* (internal quotation marks and

citation omitted). And our Supreme Court has announced that "[l]ike common-law premises liability, the [building] waiver. . . is not limited to injuries occurring on the defendant's property." *Id.* Calling into question, at this juncture, whether the word "building" any longer fits into the title of whatever waiver this has grown up to be. *See id.* Despite all this, though, our Supreme Court has not disavowed language that permits my disagreement with today's majority opinion, having stated that it remains "clear that there are limits to" the building waiver's applicability. *Id.* ¶ 12. How truly clear that is might be debatable, but what is clear to me is that if that limit exists somewhere within the boundaries of New Mexico, we have found it.

**{36}** If indeed the exception has not yet become engorged to the degree the majority opinion concludes, the precedent cited therein factually illustrates my point. For example, the majority opinion cites *Bober*, 1991-NMSC-031, and *Encinias*, 2013-NMSC-045, to support the proposition that the building waiver is not limited to injuries occurring on or adjacent to the defendant's property. *See Maj. op.* ¶¶ 12-13, 15. In *Bober*—where our Supreme Court held that government immunity was waived where the state fair failed to properly control traffic, resulting in a car crash on a roadway bordering the fairgrounds—the injury occurred adjacent to the defendant's property. 1991-NMSC-031, ¶¶ 1-2, 30. In *Encinias*—where our Supreme Court likewise held that the plaintiff could pursue a claim under the building waiver for injuries sustained on property outside of a public school that had been cordoned off for use by the school's students—the injury occurred on nearby property that had been specifically designated by the defendants for intended use by public school students. 2013-NMSC-045, ¶¶ 2, 10. Thus, these cases—where our Supreme Court has otherwise waived immunity for off-premises injury caused by a third party—share common facts: the proximity and connection of the off-premises location is close by in terms of physical distance or otherwise connected to the government facility at issue, and involved injury to a "user" of the building—namely, a person recently present upon the premises. In other words, there must be some nexus between the defendant's property, an injured user thereof, and the off-premises location where the injury occurs.

**{37}** The district court granted summary judgment on the basis that "[t]here is no allegation in the complaint that the wrongful death occurred in NMCD's facilities, or property surrounding and linked to NMCD's facilities, or that NMCD Defendants had control and a legal interest in the property where the crime occurred. Thus, the waiver of immunity set out in Section 41-4-6(A) does not apply." While sparsely worded, this to me hits the mark. Applicable precedent has never held that the building waiver applies to injuries caused by an intentional tortfeasor at an off-premises location as attenuated and disconnected as here. Indeed, the factual record in this case itself, if taken to be true, establishes that about six months and over 100 miles separate the tort from the building to which the waiver purportedly applies. The building waiver is not so untethered, or should not be given the purpose of the TCA and the fact that there are so few exceptions to the public immunity it bestows. My view of the exception would maintain a requirement of core proximity-derived nexuses to the building at issue. Unless the Legislature wishes to revise the TCA to declare otherwise.

**{38}** I agree with the district court that to allow "the present matter to proceed under [the building] waiver would be an extension of the law." For these reasons, I respectfully dissent from Part I., Subsection A., of the majority opinion and would affirm the district court in all respects.

**J. MILES HANISEE, Chief Judge**